UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MERIDIAN PROJECT SYSTEMS,
INC.,

      Plaintiff,

   v.                      NO. CIV. S-04-2728 FCD DAD

                                 <u>MEMORANDUM AND ORDER</u>

HARDIN CONSTRUCTION COMPANY,
LLC, and COMPUTER METHODS
INTERNATION CORP.,

      Defendants.

_____/

COMPUTER METHODS INTERNATION
CORP., and HARDIN CONSTRUCTION
COMPANY, LLC,

        Counterclaimants,

   v.

MERIDIAN PROJECT SYSTEMS,
INC., and JAMES OLSEN, JOHN
BODROZIC, and MIKE CARRINGTON,

        Counterdefendants.
_____/

1

----ooOoo----

This matter is before the court on motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), filed by plaintiff and counterdefendant Meridian Project Systems, Inc. ("Meridian"), and counterdefendants James Olsen ("Olsen"), John Bodrozic ("Bodrozic"), and Mike Carrington ("Carrington").[1],[2]  Defendant and countercomplainant, Computer Methods International Corp. ("CMIC"), opposes the motion.[3]

## BACKGROUND

Meridian is a software company that provides project management software for large real estate projects and other capital-intensive construction initiatives.  (First Amended Complaint ("FAC") ¶ 9.)  Meridian's "flagship" product is Prolog Manager ("Prolog"), a project management software package that automates all aspects of the construction process, from project design to closeout.  (FAC ¶ 9.)

Defendant Hardin Construction Company, LLC ("Hardin") is a large construction company in Georgia and long-time customer of Meridian for its Prolog product.  (FAC ¶ 11.)  Defendant CMIC is a software company based in Canada that provides software products and software consulting.  (FAC ¶ 14.)

Meridian alleges that, beginning in late 2000 or early 2001,

---

[1]    Because oral argument will not be of material assistance, the court orders the matter submitted on the briefs. E.D. Cal. L. R. 78-230(h).

[2]    The four counterdefendants are referred to herein collectively as "counterdefendants."

[3]    Defendant and counterclaimant Hardin is not a party to the Second through Fourth Counterclaims and has not filed a response to counterdefendants' motion to dismiss.

2

Hardin and CMIC initiated a scheme to reverse engineer Prolog for the purpose of developing a competing project management software solution that CMIC could combine with its existing financial and operational software. (FAC ¶ 16.)  As part of this scheme, CMIC allegedly sent a programmer to Hardin's facilities on numerous occasions to view screen shots of Prolog, and then reverse engineered and analyzed the functions, features, screens, architecture, logic and operation of Prolog, in violation of Meridian's standard End User License Agreement. (FAC ¶ 16.) Hardin and CMIC allegedly thereby developed a competing project management software product, called CMIC Projects, that has the same overall look and feel as Prolog, and among other similarities, copies many of the features and functions of Prolog.  (FAC ¶ 17.) Meridian alleges that Hardin and CMIC now are targeting Meridian customers to induce them to switch from Prolog to CMIC Projects.  (FAC ¶ 18.)

On November 29, 2004, Meridian filed a complaint against CMIC and Hardin in the Superior Court of Sacramento County.  CMIC and Hardin subsequently removed the action to this court.  The original complaint asserted seven causes of action for breach of contract against CMIC, breach of contract against Hardin, breach of the implied covenant of good faith and fair dealing, fraud, interference with contractual relations, intentional interference with prospective economic advantage, and unfair competition. (FAC ¶¶ 20-58.)  On January 14, 2005, counterdefendants filed the First Amended Complaint, which added an eighth claim, for copyright infringement, to the seven claims asserted in the original complaint.  (FAC ¶¶ 59-68.)

3

On February 3, 2005, CMIC and Hardin filed an "Answer and Counterclaims", which added three Meridian officers, Olsen, Bodrozic and Carrington, as parties to the lawsuit.  The next day, CMIC and Hardin filed an "Amended Answer and Counterclaims." On February 28, 2005, Meridian moved to dismiss the counterclaims in the Amended Answer and Counterclaims.  In response, CMIC and Hardin filed the operative "Second Amended Answer and Counterclaims" ("SACC") on March 11, 2005.

In the SACC, Hardin and CMIC deny that they infringed Meridian's copyright or created a derivative work of any of Meridian's products. (SACC ¶ 97.)  In addition, Hardin and CMIC jointly assert a counterclaim for declaratory judgment under 28 U.S.C. §§ 2201 and 2202 as to the extent of Meridian's rights under the Copyright Act, and that defendants did not infringe the copyright ("First Counterclaim").  CMIC individually asserts three counterclaims, for attempted monopolization, interference with prospective economic advantage, and unfair competition under California Business & Professions Code § 17200 et seq. ("Second, Third, and Fourth Counterclaim," respectively) (SACC ¶¶ 99-113.)

The Second through Fourth Counterclaims are based on the following allegations: Meridian invited CMIC's potential customers to a meeting on November 30, 2004 in Chicago, Illinois. (SACC ¶¶ 103-104.)  Present at the meeting were Bodrozic, Meridian's President, and Carrington, Meridian's Senior Vice President for Global Sales.  (SACC ¶ 104.)  At the meeting, Bodrozic allegedly notified the potential customers of Meridian's lawsuit against CMIC and Hardin, stated that CMIC had infringed Meridian's copyright, and impliedly threatened the customers with

4

copyright infringement lawsuits if they purchased software from CMIC.  (SACC ¶ 104.)

On April 1, 2005, counterdefendants filed the instant motion to dismiss the Second through Fourth Counterclaims. Counterdefendants contend that all three counterclaims fail to meet the applicable pleading requirement in Federal Rule of Civil Procedure 9(b)[4]; the three counterclaims are barred by the Noerr-Pennington Doctrine; the state law claims are barred by the litigation privilege in California Civil Code § 47(b); CMIC fails to plead the necessary elements of the attempted monopolization claim; the unfair competition claim fails because it is based on conduct outside of California; and CMIC fails to state a claim against counterdefendants Olsen and Carrington.  For the reasons stated herein, counterdefendants' motion is GRANTED in part and DENIED in part.

## STANDARD

On a motion to dismiss, the allegations of the complaint must be accepted as true.  Cruz v. Beto, 405 U.S. 319, 322 (1972).  The court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged.  See id.

Given that the complaint is construed favorably to the pleader, the court may not dismiss the complaint for failure to

---

[4]   All further references to the "Rules" are to the Federal Rules of Civil Procedure, unless otherwise noted.

state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45 (1957); <u>NL Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986).

Nevertheless, it is inappropriate to assume that plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." <u>Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).  Moreover, the court "need not assume the truth of legal conclusions cast in the form of factual allegations."  <u>United States ex rel. Chunie v. Ringrose</u>, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. <u>See</u> <u>Mir v. Little Co. Of Mary Hosp.</u>, 844 F.2d 646, 649 (9th Cir. 1988); <u>Isuzu Motors Ltd. v. Consumers Union of United States, Inc.</u>, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

## ANALYSIS

## I.   Rule 9(b)

Counterdefendants contend that the court should apply Rule 9(b)'s heightened pleading requirement because the Second through Fourth Counterclaims sound in fraud.  Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b).  It is well-settled in

the Ninth Circuit that misrepresentation claims are a species of fraud, which must meet Rule 9(b)'s particularity requirement. <u>Neilson v. Union Bank of Cal., N.A.</u>, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003).[5]   Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged in the complaint.  <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003) (citations omitted).  However, only allegations of fraud must be pled with particularity; allegations of non-fraudulent conduct can be pleaded generally.  <u>Vess</u>, 317 F.3d at 1104.  An inadequate averment of fraud does not necessarily mean that no claim has been stated.  <u>Id.</u>  "The proper route is to disregard the averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated." <u>Id.</u> at 1105 (quoting <u>Lone Star Ladies Inv. Club v. Schlotsky's Inc.</u>, 238 F.3d 363, 268 (5th Cir. 2001)).

Here, CMIC's Second through Fourth Counterclaims are based on the common allegations that counterdefendants intentionally misrepresented to CMIC's prospective customers that CMIC had infringed Meridian's copyright, in order to dissuade the customers from purchasing CMIC's software products.  The SACC further alleges that the acts were committed "with malice, fraud and oppression."  (SACC at 14.)  While fraud is not an element of

---

[5]    <u>See also</u> <u>Glenn Holly Entm't, Inc. v. Tektronix, Inc.</u>, 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999) ("Claims for fraud and negligent misrepresentation must meet the heightened pleading requirements of Rule 9(b)."); <u>U.S. Concord, Inc. v. Harris Graphics Corp.</u>, 757 F. Supp. 1053, 1058 (N.D. Cal. 1991) ("Defendant further asserts that the negligent misrepresentation claim fails to satisfy Rule 9(b)'s particularity requirements. The point is well-taken.  Since the claim is based upon the same flawed allegations of misrepresentation as the fraud count, it, too, fails for lack of specificity.").

any claim asserted by CMIC, nonetheless CMIC has alleged that
counterdefendants engaged in fraudulent conduct – the allegedly
false statement that CMIC violated Meridian's copyright.  Thus,
the court will apply Rule 9(b) to CMIC's allegations that
counterdefendants made intentional misrepresentations.  See Vess,
317 F.3d at 1103-1104 (finding that, even where fraud is not a
necessary element of a claim, where plaintiff alleges that the
defendant engaged in some fraudulent and some non-fraudulent
conduct, the allegations of fraud are subject to Rule 9(b)).

Applying Rule 9(b), the court finds that the allegations of
false statements made by Bodrozic at the November 30, 2004
meeting, contained in paragraphs 102 through 106 of the SACC,
satisfy Rule 9(b)'s pleading standard because they describe the
who, what, where when and how of the alleged misrepresentations.
Vess, 317 F.3d at 1106.  Moreover, contrary to counterdefendants'
contention, the SACC explains why the statements were false.
Specifically, the SACC alleges that "defendants have not
infringed Meridian's copyrights, have not created a derivative
work of any of Meridian's works, and have not otherwise violated
Meridian's rights."  (SACC ¶ 98.)

However, the SACC also contains allegations regarding
additional misrepresentations that do not satisfy Rule 9(b).
Specifically, paragraph 107 of the SACC provides that "on
information and belief, Meridian, Olsen, Bodrozic and Carrington
have made similar statements to other potential customers of
CMIC."  These allegations do not describe when, where or to whom
the misrepresentations were made, or provide any other details
that would afford counterdefendants an opportunity to rebut the

8

1  charges.  Thus, these general allegations of misconduct are

2  stricken from the SACC and will be disregarded when determining

3  whether CMIC's Second through Fourth Counterclaims state a claim

4  for relief.  Vess, 317 F.3d 1105.

5  **II.  Noerr-Pennington Doctrine**

6      Counterdefendants contend that the Second through Fourth

7  Counterclaims must be dismissed because Meridian's filing of the

8  lawsuit is entitled to Noerr-Pennington immunity.

9      The Noerr-Pennington doctrine provides broad antitrust

10  protection for those who "petition the government for a redress

11  of grievances."  City of Columbia v. Omni Outdoor Adver., Inc.,

12  499 U.S. 365, 379 (1991) (quoting U.S. Const., amend. I).  This

13  protection extends to lobbying both the executive and legislative

14  branches, E. R.R. Presidents Conf. v. Noerr Motor Freight Ins.,

15  365 U.S. 127, 137-38 (1961), and to petitioning of administrative

16  agencies and courts, Cal. Motor Transp. Co. v. Trucking

17  Unlimited, 404 U.S. 508, 510 (1972).

18      However, where a party engages in "sham" petitioning, Noerr-

19  Pennington immunity does not apply.  USS-POSCO Indus. v. Contra

20  Costa County Bldg. & Constr. Trades Council, 31 F.3d 800, 810

21  (9th Cir. 1994).  The "sham" litigation exception exempts from

22  Noerr-Pennington immunity activity "ostensibly directed toward

23  influencing governmental action" that "is a mere sham to cover

24  . . . an attempt to interfere directly with the business

25  relationships of a competitor."  Noerr, 365 U.S. at 144.  The

26  "sham" exception encompasses situations in which persons use the

27  governmental process — as opposed to the outcome of the process —

28  as an anti-competitive weapon.  Id.  In this Circuit, if the

9

alleged anti-competitive behavior consists of bringing a sham lawsuit, "the antitrust plaintiff must demonstrate that the lawsuit was (1) objectively baseless, and (2) a concealed attempt to interfere with the plaintiff's business relationships." Freeman v. Lasky, Haas & Cohler, No. 03-56588, 2005 WL 1389122, at *2 (9th Cir. June 14, 2005).

In claims involving the "right to petition governmental bodies under Noerr-Pennington" a "heightened pleading standard" is applied, requiring the plaintiff to "satisfy more than the usual 12(b)(6) standard."[6]  Or. Natural Res. Council v. Mohla, 944 F.2d 531, 533 (9th Cir. 1991).  Under this standard, the complaint will be dismissed unless it includes allegations of "specific activities which bring the defendant's conduct" into one of the Noerr-Pennington exceptions.  Id. (citing Franchise Realty Interstate Corp. v. S.F. Local Joint Exec. Bd. of Culinary Workers,542 F.2d 1076, 1082 (9th Cir. 1976) (internal quotation marks omitted).

---

[6]    CMIC contends that the Ninth Circuit cases recognizing a heightened pleading standard in Noerr-Pennington cases are "not good law" in light of the Supreme Court's decisions in Leatherman v. Tarrant County Narcotics Intelligence Coordination Unit, 507 U.S. 163, 169 (1993)(no heightened pleading requirement in constitutional tort cases against municipalities), and Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513 (2002)(no heightened pleading for claims under Title VII of the Civil Rights Act).  (CMIC's Mem. Opp'n Mot. Dismiss at 8.)  However, the Ninth Circuit continued to employ a heightened pleading requirement in Noerr-Pennington cases well after Leatherman was decided.  See Kottle v. Northwest Kidney Centers, 146 F.3d 1056 (9th Cir. 1998); Flowers v. Carville, 310 F.3d 1118, 1131 (9th Cir. 2002) (applying heightened pleading requirement, but noting potential conflict with Supreme Court cases declining to afford special procedural protections in other First Amendment contexts) (citing Calder v. Jones, 465 U.S. 783, 790-91 (1984)).  Thus, the court finds that heightened pleading in Noerr-Pennington cases is still required in this Circuit.

1    Counterdefendants contend that, under Rule 9(b) and the

2    Noerr-Pennington heightened pleading standard, CMIC's allegations

3    are insufficient to bring Meridian's conduct within the sham

4    exception, because the allegations are mere legal conclusions

5    that the copyright claim is "objectively baseless."  Because CMIC

6    alleges that *both* Meridian's filing of the complaint and the

7    false statements to CMIC's prospective customers fall within the

8    sham exception, the court will analyze each separately.

9    **A.   Filing of the Complaint**

10   Initially, the court notes that CMIC's allegations regarding

11   Meridian's filing of the complaint implicate both Rule 9(b) and

12   Noerr-Pennington's heightened pleading standard.  Thus, in

13   addition to providing the "who, what, where, when and how" of the

14   misconduct, the SACC must contain allegations regarding the

15   "specific activities which bring the defendant's conduct" into

16   one of the Noerr-Pennington exceptions. Mohla, 944 F.2d at 533.

17   In the SACC, CMIC alleges that Meridian filed its complaint

18   despite the fact that the copyright claim was "objectively

19   baseless and that Meridian and its officers "knew and know that

20   its claim is objectively baseless."  (SACC ¶ 100.)  CMIC further

21   alleges that Meridian brought this action for the purpose of

22   interfering with CMIC's business rather than the purpose of

23   obtaining the relief requested."  (SACC ¶ 101.)  The flaw with

24   CMIC's allegations is not their specificity.  To the contrary, as

25   to the copyright claim, CMIC's allegations appear to satisfy both

26   Rule 9(b) and the Noerr-Pennington heightened pleading

27   requirement because they provide specific detail regarding the

28   alleged misconduct: Meridian asserting a claim it knew was

11

objectively baseless.  However, to fall within the sham

exception, Meridian's filing of the *lawsuit* must be objectively

baseless.  <u>Freeman</u>, 2005 WL 1389122, at *2 (requiring the

antitrust plaintiff that the lawsuit was objectively baseless).

Meridian's complaint contains seven other claims, which CMIC does

not allege are baseless.  Because CMIC makes no allegation that

these seven claims lack merit, the court cannot say Meridian's

complaint as a whole is objectively baseless.  Thus, CMIC's

allegation that a single claim is objectively baseless does not

bring Meridian's filing of the entire complaint within the sham

exception.[7]

### B. Communications with CMIC's Prospective Customers

CMIC's Second through Fourth Counterclaims also are

predicated on the alleged misrepresentations to CMIC's customers

at the November 30, 2004 meeting in Chicago, Illinois.  Because

the pertinent allegations describe fraudulent conduct, they must

satisfy Rule 9(b) and <u>Noerr</u>-<u>Pennington</u>'s heightened pleading

requirement.  However, the court previously found that these

allegations satisfy Rule 9(b), <u>see</u> section I, <u>supra</u>, and for the

same reasons, they satisfy <u>Noerr</u>-<u>Pennington</u>'s heightened pleading

requirements.  Thus, the sole remaining question is whether the

conduct alleged falls within the sham exception to <u>Noerr</u>-

<u>Pennington</u> immunity.

Where applicable, the <u>Noerr</u>-<u>Pennington</u> doctrine extends

immunity not only to the actual proceedings but to conduct

incidental to prosecution of the suit.  <u>Freeman</u>, 2005 WL 1389122,

---

[7]     This would be true even if the court were applying Rule
8(a)'s notice pleading standard.

12

at *2 (holding that "conduct incidental to a petition is protected by Noerr-Pennington if the petition itself is protected."). Most courts to address the issue have concluded that pre-litigation communications *among parties* are incidental to the suit and thus immune under Noerr-Pennington.

> Given that petitioning immunity protects joint litigation, it would be absurd to hold that it does not protect those acts reasonably and normally attendant upon effective litigation. The litigator should not be protected only when he strikes without warning. If litigation is in good faith, a token of that sincerity is a warning that it will be commenced and a possible effort to compromise the dispute.

Coastal States Mktg., Inc. v. Hunt, 694 F.2d 1358, 1367 (5th Cir. 1983).[8]

Most courts have further extended Noerr-Pennington immunity to protect a party's communications with an opponent's customers when the communications are good faith acts attendant to effective litigation. See Alexander v. National Farmers Organization, 687 F.2d 1173, 1200-01 (8th Cir. 1982) (noting that "[t]here may be circumstances in which actions against a competitor's customers are in good faith" but finding conduct in that case was clearly attempt to drive away competitor's customers); Barq's Inc. v. Barq's Beverages, Inc., 677 F. Supp. 449 (E.D. La. 1987) (finding letters to suppliers and demand letters which preceded filing the lawsuit were protected under

---

[8]     See also Globetrotter Software, Inc. v. Elan Computer Group, Inc., 362 F.3d 1367, 1376 (Fed. Cir. 2004); Primetime 24 Joint Venture v. Nat'l Broad. Co., 219 F.3d 92, 100 (2d Cir. 2000); A.D. Bedell Wholesale Co. v. Philip Morris Inc., 263 F.3d 239, 252-53 (3d Cir. 2001); McGuire Oil Co. v. Mapco, Inc., 958 F.2d 1552, 1560 (11th Cir. 1992). But cf. Cardtoons, L.C. v. Major League Baseball Players Ass'n, 208 F.3d 885, 890-91 (10th Cir. 2000) (refusing to apply Coastal States outside of the antitrust context).

1 Noerr-Pennington where litigation was filed in good faith).

2 But cf. Oahu Gas Serv., Inc. v. Pac. Res., Inc., 460 F. Supp.

3 1359, 1386 (D. Haw. 1978) (finding that alleged threats of

4 lawsuits against potential customers for the purpose of

5 foreclosing competition, if proven, would not be protected by the

6 Noerr-Pennington privilege).

7     Here, CMIC alleges that counterdefendants' communications

8 with CMIC's prospective customers were made "with the wrongful

9 intent of disrupting CMIC's relationship with prospective

10 customers." (SACC ¶¶ 120-22.) Such communications are not "good

11 faith acts attendant to effective litigation." Alexander, 687

12 F.2d at 1200-1201. Thus, accepting CMIC's allegation as true for

13 purposes of this motion, counterdefendants' contacts with CMIC's

14 prospective customers are not entitled to Noerr-Pennington

15 protection.

16     Accordingly, Meridian's motion to dismiss the Second through

17 Fourth Counterclaims on the basis of Noerr-Pennington immunity is

18 GRANTED as to the filing of the complaint and DENIED in all other

19 respects.

20 **III. California Civil Code § 47(b)**

21     Counterdefendants next contend that CMIC's state law claims,

22 for interference with prospective economic advantage and unfair

23 business practices, must be dismissed because counterdefendants'

24 conduct is entitled to absolute privilege under California Civil

25 Code § 47(b).[9]

26

27     [9] CMIC's argues that the litigation privilege does not
apply because counterdefendants' false statements to CMIC's

28                                          (continued...)

14

California Civil Code § 47(b) bars tort liability for statements made in legislative, judicial, or other official proceedings.  Cal. Civ. Code § 47(b).  The privilege is absolute, and bars all tort causes of action, except a claim for malicious prosecution.  Hagberg v. Cal. Fed. Bank, FSB, 32 Cal. 4th 350, 361 (2004).  The purpose of § 47(b) is to "assure utmost freedom of communication between citizens and public authorities."  Id. (quoting Silberg v. Anderson, 50 Cal. 3d 205, 213 (1990)).

In the context of judicial proceedings, the § 47(b) privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action."  Rubin v. Green, 4 Cal. 4th 1187, 1193-96 (1993); Moore v. Conliffe, 7 Cal. 4th 634, 640-41, (1994); Jeffrey H. v. Imai, Tadlock & Keeney, 85 Cal. App. 4th 345, 355-356 (2000). The requirement that the communication be made in judicial or quasi-judicial proceedings does not limit the privilege to statements made in the courtroom and in pleadings.  Rather, the privilege protects "any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation . . . ."  Hagberg, 32 Cal. 4th at 361 (quoting Silberg, 50 Cal. 3d at 212).

Here, CMIC alleges that counterdefendants' November 30, 2004

---

[9](...continued)
customers fall outside of the privilege.  Because CMIC's argument is predicated on its allegations of fraud, Rule 9(b) applies. However, as noted in Section I, supra, the court previously found that these allegations satisfy Rule 9(b).

1  meeting with CMIC's customers was not a good faith effort to

2  forestall litigation, but merely an effort to discourage the

3  customers from purchasing CMIC's product.  (SACC ¶ 106.)  Such

4  anti-competitive conduct would not be privileged under § 47(b).

5  Because the court accepts the allegations as true for purposes of

6  deciding a motion to dismiss, counterdefefendants' motion to

7  dismiss the Third and Fourth Counterclaims on the basis of §

8  47(b) privilege is DENIED.

9  **IV.  Attempted Monopolization Claim**

10      According to counterdefefendants, the court must dismiss

11  CMIC's attempted monopolization claim because CMIC does not

12  sufficiently allege the elements of a claim for attempted

13  monopolization.  Those elements are (1) specific intent to

14  control prices or destroy competition, (2) predatory or anti-

15  competitive conduct directed at accomplishing that purpose, (3) a

16  dangerous probability of achieving 'monopoly power', and (4)

17  causal antitrust injury.  <u>Rebel Oil Co. v. Atl. Richfield Co.</u>, 51

18  F.3d 1421, 1433 (9th Cir. 1995).  Specifically, counterdefendants

19  contend that CMIC does not sufficiently allege the elements of

20  dangerous probability of achieving monopoly power and causal

21  antitrust injury.[10]

22

23      [10]  Counterdefendants invoke yet another heightened
   pleading requirement, arguing that, in complex antitrust cases,
24  the court retains discretion to "insist upon some specificity in
   the pleading before allowing a potentially massive factual
25  controversy to proceed."  (Mem. in Supp. Mot. Dismiss at 13
   [citing <u>Associated Gen. Contractors of Cal., Inc. v. Cal. State</u>
26  <u>Council of Carpenters</u>, 459 U.S. 519, 526 n.17 (1983)].)  CMIC
   responds that there is no heightened pleading requirement in
27  antitrust cases.  (CMIC's Mem. in Opp'n Mot. Dismiss at 12.)  The
   court need not determine whether the cases recognizing this
28                                                   (continued...)

## A.   Dangerous Probability of Achieving Monopoly Power

First, Meridian contends that CMIC has failed to allege that Meridian had a dangerous probability of achieving monopoly power. Rule 8(a)'s notice pleading applies to this element because it does not incorporate allegations of misrepresentation.

Here, the SACC states only that "[c]ounterdefendants' acts create a dangerous probability of Meridian achieving monopoly power in the relevant market which is the market for project management software for architects, engineers, and contractors in the United States and Canada." (SACC ¶ 110.)  While CMIC does define the relevant market, it provides no facts from which this court can infer that Meridian's conduct created a dangerous probability of it achieving market power.  The bare legal conclusion to that effect is insufficient to satisfy even Rule 8(a)'s liberal pleading standard.[11]  See Chunie, 788 F.2d at 643 n.2 (finding that the court "need not assume the truth of legal conclusions cast in the form of factual allegations."); see also Eon Labs Mfg., Inc. v. Watson Pharms., Inc., 164 F. Supp. 2d 350, 360 n.12 (S.D.N.Y. 2001) (finding that the "complaint must at least outline the contours of the monopolization claim," and absence of circumstances to support inference of monopoly power

---

[10](...continued)
pleading requirement are still good law because the court finds that CMIC's single antitrust claim, based on a meeting at which Meridian's agents allegedly attempted to stifle competition, is not so complex as to require more specific pleading.

[11]    Because the court finds that CMIC's pleading does not sufficiently allege dangerous probability of achieving monopoly power, it need not determine whether CMIC sufficiently alleges the element of causal antitrust injury.

violates even the permissive reading required on a 12(b)(6)

motion); Endsley v. City of Chicago, 230 F.3d 276, 282 (7th Cir.

2000)(noting that "where plaintiff's fail to identify any facts

from which the court can 'infer that defendants had sufficient

market power to have been able to create a monopoly,' their § 2

claim may properly be dismissed.")[12]  Accordingly,

counterdefendants' motion to dismiss CMIC's Second Counterclaim

for attempted monopolization is GRANTED.

**V.   Unfair Competition Claim**

Counterdefendants next contend that the court must dismiss

CMIC's Fourth Counterclaim for unfair business practices in

violation of California's Unfair Competition Law ("UCL"),

California Business & Professions Code § 17200, because the

statute does not apply to extraterritorial conduct.

California law embodies a presumption against the

extraterritorial application of its statutes.  See Diamond

Multimedia Sys., Inc. v. Superior Court, 19 Cal. 4th 1036, 1060

n.20 (1999).  Courts have specifically held that California's UCL

does not support claims by non-California residents where none of

the alleged misconduct or injuries occurred in California.  See

Norwest Mortgage, Inc. v. Superior Court, 72 Cal. App. 4th 214,

222 (1999).  Indeed, a California court's adjudication of

non-residents' claims without a nexus to California "raises

significant due process problems."  Id. at 225 (citing Phillips

---

[12]   CMIC attempts to distinguish these cases on the ground that they involved monopolization claims, not attempted monopolization claims.  However, the principle that the court need not accept as true legal conclusions cast as factual allegations, applies equally to attempted monopolization claims. See Chunie, 788 F.2d at 643 n.2.

Petroleum Co. v. Shutts, 472 U.S. 797, 810-11 (1985)); see also Churchill Village, L.L.C. v. GE, 169 F. Supp. 2d 1119, 126-27 (N.D. Cal. 2000) (finding court lacked jurisdiction over § 17200 claim for injunctive relief where none of the challenged conduct occurred in California, and only California residents were injured in California).

CMIC is a Canadian corporation; therefore, the court infers that its injuries occurred there, and not in California.[13] (SACC ¶ 87.) Moreover, the specific misconduct identified by CMIC occurred in Chicago, Illinois – clearly outside the purview of the UCL.[14] Thus, no specific intrastate misconduct is alleged in the SACC.

CMIC argues, however, that "even assuming arguendo that the [SACC] does not allege conduct taking place in California, it is reasonably inferred that counterdefendants committed at least some of their unlawful acts in this state." (CMIC's Mem. Opp'n Mot. Dismiss at 15.) CMIC points to the allegations that Meridian and its officers reside in California and that they "authorized, ordered or directed" the acts alleged in the

---

[13]   While presumably an out-of-state corporation could suffer injury in California, CMIC makes no allegation to that effect, and the court can not draw this inference from the facts alleged.

[14]   CMIC cites Wershba v. Apple Computer, Inc., 91 Cal. App. 4th 224 (2001), to support its argument that the UCL applies because counterdefendants' conduct "emanated from California". However Wershba is factually distinguishable.  In that case, the court was presented with specific California misconduct, including the preparation and distribution of brochures in California and decision making at defendant's California offices. See id. at 241-42.  Here, no such intra-state conduct is alleged.

counterclaim.  (CMIC's Mem. Opp'n Mot. Dismiss at 15.)   However,
even if these general allegations were sufficient for the court
to infer intrastate conduct, to the extent they are construed to
allege fraudulent conduct, they must satisfy Rule 9(b).[15]
Because they do not describe the who, what, where, when and how
of counter-defendants' alleged intrastate misrepresentations,
they fail to satisfy this pleading requirement.  <u>Vess</u>, 317 F.3d
at 1106.   Accordingly, counterdefendants' motion to dismiss
CMIC's Fourth Counterclaim is GRANTED.

## VI.   Individual Counterdefendants

Finally, counterdefendants contend that CMIC fails to allege
any misconduct by counterdefendants Carrington and Olsen.   When
fraud claims involve multiple defendants, the complaint must
satisfy Rule 9(b) particularity requirements for each defendant.
<u>King v. Deutsche Bank Ag</u>, No. CV 04-1029-HV, 2005 U.S. Dist.
LEXIS 11317, at *71 (D. Or., Mar. 8, 2005) (citing <u>In re Worlds
of Wonder Sec. Litig.</u>, 694 F. Supp. 1427, 1432 (N.D. Cal. 1988)).

Here, the allegations of misconduct specific to Olsen and
Carrington state that "on information and belief, Meridian,
Olsen, Bodrozic and Carrington have made similar statements to
other potential customers of CMIC," and that "Olsen, Bodrozic and
Carrington authorized, ordered or directed the acts alleged in
this counterclaim."  (SACC ¶¶ 107, 112.)   The court previously
found that these allegations fail to satisfy Rule 9(b).  <u>See</u>
sections I and V, <u>supra</u>.  Thus, they must be disregarded when

---

[15]   Because the averments in paragraphs 111 and 124 of the
SACC can be construed to allege either fraudulent or non-
fraudulent conduct, the court strikes them from the SACC only to
the extent they allege fraudulent conduct.

1   determining whether the SACC states a claim against Olsen and

2   Carrington.   Stripped of these general allegations, the SACC

3   fails to state a claim against Olsen and Carrington, as it is

4   completely silent regarding their conduct.   Thus, the Second

5   through Fourth Counterclaims must be dismissed as to

6   counterdefendants Olsen and Carrington.

7                            **CONCLUSION**

8        For the reasons stated herein, counterdefendants' motion to

9   dismiss is GRANTED in part and DENIED in part, as follows:

10  (1)   Counterdefendants' motion to dismiss the Second through

11  Fourth Claims on the basis of <u>Noerr</u>-<u>Pennington</u> Immunity is

12  GRANTED, with leave to amend, to the extent these claims are

13  based on Meridian's filing of the complaint and DENIED in all

14  other respects.

15  (2)   Counterdefendants' motion to dismiss CMIC's Second

16  Counterclaim, for attempted monopolization, and Fourth

17  Counterclaim, for violation of California Business & Professions

18  Code § 17200, for failure to state a claim, is GRANTED, with

19  leave to amend.

20  (3)   Counterdefendants' motion to dismiss the Second through

21  Fourth Counterclaims for failure to state a claim against

22  counterdefendants Olsen and Carrington is GRANTED, with leave to

23  amend.

24  (4)   CMIC is granted twenty (20) days from the issuance of this

25  order to file a Third Amended Answer and Counterclaims.

26       IT IS SO ORDERED.

27  DATED: July 6, 2005.

28                              /s/ Frank C. Damrell Jr.

FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE