UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MERIDIAN PROJECT SYSTEMS, INC.,

      Plaintiff,

  v.                    NO. CIV. S-04-2728 FCD DAD

HARDIN CONSTRUCTION COMPANY, LLC, and COMPUTER METHODS INTERNATIONAL CORP.,

      Defendants.

_____/

COMPUTER METHODS INTERNATIONAL CORP., and HARDIN CONSTRUCTION COMPANY, LLC,

      Counterclaimants,

  v.

MERIDIAN PROJECT SYSTEMS, INC., JAMES OLSEN, JOHN BODROZIC, and MIKE CARRINGTON,

      Counterdefendants.

_____/

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on counterdefendants' Meridian Project Systems, Inc. ("Meridian") and John Bodrozic's ("Bodrozic") motion to dismiss counterclaimant Computer Methods International Corp.'s ("CMIC") second and third counterclaims for relief asserted in its Third Amended Answer and Counterclaim ("TACC"),[1] pursuant to Fed. R. Civ. P. 12(b)(6). CMIC opposes the motion.[2] For the reasons set forth below,[3] counterdefendants' motion is DENIED.

## BACKGROUND

Meridian is a software company that provides project management software for large real estate projects and other capital-intensive construction initiatives. (First Amended Complaint ("FAC") ¶ 9). Meridian's "flagship" product is Prolog

---

[1] Counterdefendants request the court to take judicial notice of an industry survey relied upon by CMIC in the TACC. For the reasons set forth herein, the court denies this request. In the alternative, Meridian requests that this motion to dismiss be converted into a motion for summary judgment pursuant to Fed. R. Civ. P. 12(b). Where evidence outside the pleadings is presented as part of a Rule 12(b)(6) motion, the court has discretion either to consider or reject such evidence. Keams v. Tempe Tech. Inst., 110 F.3d 44, 46 (9th Cir. 1996). Consideration of and reliance on such evidence will convert the motion to dismiss into a motion for summary judgment. Id. Conversion is generally disfavored if the motion comes quickly after the complaint was filed and discovery is in its infancy. Rubert-Torres v. Hosp. San Pablo, Inc., 205 F.3d 472, 475 (1st Cir. 2000). Thus, because this motion was filed shortly after CMIC's TACC and because discovery is in its infancy, this court declines to convert the motion to dismiss into a motion for summary judgment.

[2] Defendant and counterclaimant Hardin is not a party to the Second through Fourth Counterclaims and has not filed an opposition to counterdefendants' motion to dismiss.

[3] Because oral argument will not be of material assistance, the court orders the matter submitted on the briefs. E.D. Cal. L. R. 78-230(h).

2

1  Manager ("Prolog"), a project management software package that
2  automates all aspects of the construction process, from project
3  design to closeout.  (Id.)

4      Counterclaimant Hardin Construction Company, LLC ("Hardin")
5  is a large construction company in Georgia and long-time customer
6  of Meridian for its Prolog product.  (Id. ¶ 11).  Counterclaimant
7  CMIC is a software company based in Canada that provides software
8  products and software consulting.  (Id. ¶ 14).

9      Meridian alleges that, beginning in late 2000 or early 2001,
10 Hardin and CMIC initiated a scheme to reverse engineer Prolog for
11 the purpose of developing a competing project management software
12 solution that CMIC could combine with its existing financial and
13 operational software.  (Id. ¶ 16).  As part of this scheme, CMIC
14 allegedly sent a programmer to Hardin's facilities on numerous
15 occasions to view screen shots of Prolog; CMIC then reverse
16 engineered and analyzed the functions, features, screens,
17 architecture, logic and operation of Prolog, in violation of
18 Meridian's standard End User License Agreement. (Id.)  Thereby,
19 Hardin and CMIC allegedly developed a competing project
20 management software product, called CMIC Projects, that has the
21 same overall look and feel as Prolog, and among other
22 similarities, copies many of the features and functions of
23 Prolog.  (Id. ¶ 17). Meridian alleges that Hardin and CMIC now
24 are targeting Meridian customers to induce them to switch from
25 Prolog to CMIC Projects.  (Id. ¶ 18).

26     On November 29, 2004, Meridian filed a complaint against
27 CMIC and Hardin in the Superior Court of Sacramento County.  CMIC
28 and Hardin subsequently removed the action to this court.

3

1  Meridian asserts eight causes of action for breach of contract
2  against CMIC, breach of contract against Hardin, breach of the
3  implied covenant of good faith and fair dealing, fraud,
4  interference with contractual relations, intentional interference
5  with prospective economic advantage, unfair competition, and
6  copyright infringement.  (Id. ¶¶ 20-68).

7  On February 3, 2005, CMIC and Hardin filed an Answer and
8  Counterclaims, which added three Meridian officers, Olsen,
9  Bodrozic and Carrington, as parties to the lawsuit.  The next
10 day, CMIC and Hardin filed an Amended Answer and Counterclaims.
11 On February 28, 2005, Meridian moved to dismiss the counterclaims
12 in the Amended Answer and Counterclaims.  In response, CMIC and
13 Hardin filed a Second Amended Answer and Counterclaims ("SACC")
14 on March 11, 2005.

15 In the SACC, Hardin and CMIC denied that they infringed
16 Meridian's copyright or created a derivative work of any of
17 Meridian's products. (SACC ¶ 97).  In addition, Hardin and CMIC
18 jointly asserted a counterclaim for declaratory judgment under 28
19 U.S.C. §§ 2201 and 2202 as to the extent of Meridian's rights
20 under the Copyright Act, and that defendants did not infringe the
21 copyright ("First Counterclaim").

22 CMIC individually asserted three counterclaims against
23 Meridian, Olsen, Bodrozic, and Carrington for attempted
24 monopolization, interference with prospective economic advantage,
25 and unfair competition under California Business & Professions
26 Code § 17200 et seq.  (Id. ¶¶ 99-113).
27 /////
28 /////

4

These counterclaims were based on the following allegations: Meridian invited CMIC's potential customers to a meeting on November 30, 2004, in Chicago, Illinois. (Id. ¶¶ 103-104). Present at the meeting were Bodrozic, Meridian's President, and Carrington, Meridian's Senior Vice President for Global Sales. (Id. ¶ 104). At the meeting, Bodrozic allegedly notified the potential customers of Meridian's lawsuit against CMIC and Hardin, stated that CMIC had infringed Meridian's copyright, and impliedly threatened the customers with copyright infringement lawsuits if they purchased software from CMIC. (Id. ¶ 104).

On April 1, 2005, counterdefendants filed a motion to dismiss CMIC's counterclaims. Counterdefendants contended that all three counterclaims failed to meet the applicable pleading requirement in Federal Rule of Civil Procedure 9(b); the three counterclaims were barred by the Noerr-Pennington Doctrine; the state law claims were barred by the litigation privilege in California Civil Code § 47(b); CMIC failed to plead the necessary elements of the attempted monopolization claim; the unfair competition claim failed because it was based on conduct outside of California; and CMIC failed to state a claim against counterdefendants Olsen and Carrington. On July 6, this court granted counterdefendants' motion to dismiss in part and denied it in part. This court granted CMIC leave to amend.

On August 2, 2005, CMIC and Hardin filed a Third Amended Answer and Counterclaims ("TACC"). Hardin and CMIC again jointly asserted a counterclaim for declaratory judgment under 28 U.S.C. §§ 2201 and 2202. (TACC ¶ 93). CMIC individually asserted two counterclaims against Bodrozic and Meridian, for attempted

5

1  monopolization and interference with prospective economic
2  advantage ("Second and Third Counterclaims") (Id. ¶¶ 97-130).
3      On August 19, 2005, counterdefendants Meridian and Bodrozic
4  ("Meridian") filed the instant motion to dismiss the Second and
5  Third Counterclaims ("MTD").  Meridian asserts that the few new
6  allegations in the complaint do not remedy CMIC's failure to
7  plead the necessary elements of an attempted monopolization
8  claim.  Moreover, Meridian asserts that CMIC fails to state a
9  claim for tortious interference with prospective economic
10 advantage.

**STANDARD**

12     On a motion to dismiss, the allegations of the complaint
13 must be accepted as true.  Cruz v. Beto, 405 U.S. 319, 322
14 (1972).  The court is bound to give plaintiff the benefit of
15 every reasonable inference to be drawn from the "well-pleaded"
16 allegations of the complaint.  Retail Clerks Int'l Ass'n v.
17 Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff
18 need not necessarily plead a particular fact if that fact is a
19 reasonable inference from facts properly alleged.  See id.
20     Given that the complaint is construed favorably to the
21 pleader, the court may not dismiss the complaint for failure to
22 state a claim unless it appears beyond a doubt that the plaintiff
23 can prove no set of facts in support of the claim which would
24 entitle him or her to relief.  Conley v. Gibson, 355 U.S. 41, 45
25 (1957); NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir.
26 1986).
27     Nevertheless, it is inappropriate to assume that plaintiff
28 "can prove facts which it has not alleged or that the defendants

6

have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). Moreover, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. See Mir v. Little Co. Of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988); Isuzu Motors Ltd. v. Consumers Union of United States, Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

**ANALYSIS**

**I.  Second Counterclaim for Attempted Monopolization**

According to Meridian, the court must dismiss CMIC's attempted monopolization claim because CMIC does not sufficiently allege the elements of such a claim. In order to sufficiently plead a claim for attempted monopolization, CMIC must allege: 1) defendant's specific intent to control prices or destroy competition; 2) defendant's predatory or anti-competitive conduct directed at accomplishing that purpose; 3) a dangerous probability of defendant achieving monopoly power; and 4) causal antitrust injury to competition. Rebel Oil Co. v. Atl. Richfield Co., 51 F.3d 1421, 1433 (9th Cir. 1995). Specifically, Meridian contends that CMIC does not sufficiently allege the elements of dangerous probability of achieving monopoly power and causal antitrust injury.

/////

**A. Dangerous Probability of Achieving Monopoly Power**

Monopoly power is the power to control prices or exclude competition. United States v. E.I. DuPont de Nemours & Co., 351 U.S. 377, 391 (1956). In order to demonstrate market power circumstantially, a plaintiff must:

> (1) define the relevant market; (2) show that the defendant owns a dominant share of that market; and (3) show that there are significant barriers to entry and show that existing competitors lack the capacity to increase their output in the short run.

Rebel Oil, 51 F.3d at 1434.

**1. Pleading a Relevant Market**

A market definition is essential to establish a monopolization claim. Big Bear Lodging Ass'n v. Snow Summit, Inc., 182 F.3d 1096, 1105 (9th Cir. 1999). Unless alleging a *per se* violation, plaintiffs must identify the relevant geographic and product markets in which plaintiffs and defendants compete. Id. at 1104.

In its Second Amended Answer and Counterclaim ("SACC"), CMIC alleged that Meridian and CMIC sell project management software to architects, engineers, and contractors ("AECs") in the United States and Canada. (SACC ¶ 109). CMIC further alleged that Meridian's acts create a dangerous probability of it achieving monopoly power in the relevant market which is the market for project management software for AECs in the United States and Canada. (SACC ¶ 110).

In response to Meridian's Motion to Dismiss the SACC, this court noted in its order that "CMIC does define the relevant market." (Order, entered July 6, 2005, at 17). The Third Amended Answer and Counterclaim ("TACC") alleges the same

8

relevant market that this court has already found sufficient. Thus, CMIC has satisfied this prong of its attempted monopolization claim.

### 2. Pleading a Dominant Share of the Market

Both CMIC and Meridian have engaged in percentage games regarding the amount of market power necessary to show attempted monopolization. Meridian asserts that "[c]ourts generally require a 65% market share to establish a prima facie case of market power." (MTD at 8); Image Technical Servs., Inc. v. Eastman Kodak Co., 125 F.3d 1195, 1206 (9th Cir. 1995).[4] This blanket assertion has no application to the facts in this case. CMIC argues that the Ninth Circuit in Rebel Oil has "noted that allegations of 30% market share could be sufficient."[5] (Opp'n to MTD, filed September 23, 2005, at 9 ("Opp'n")). This bare conclusion is unsupported by Rebel Oil.

The Ninth Circuit, however, has cautioned courts to "be wary of the numbers game of market percentage when considering attempt-to-monopolize claims." Rebel Oil, 51 F.3d at 1438 (citing Dimmitt Agri Indus., Inc. v. CPC Int'l, Inc., 679 F.2d 516, 533 (5th Cir. 1982). Instead, the Ninth Circuit has instructed courts to analyze "market share, entry barriers, and

/////

---

[4] This is the percentage required for *actual* monopolization claims, not *attempted* monopolization claims. See Rebel Oil, 51 F.3d at 1438 (stating that minimum showing of market share is lower for attempt cases than actual monopolization cases).

[5] The Rebel Oil court actually stated that for an attempted monopolization claim, most cases hold a market share of 30% presumptively *insufficient* to establish the power to control price. Id. at 1438 (emphasis added).

9

the capacity of existing competitors to expand output" when considering market power for attempt-to-monopolize claims. Id.

The court in Rebel Oil stated that 30% market share is presumptively insufficient to establish the power to control price.[6] Id. However, when a lower market share percentage is combined with other market characteristics such as high entry barriers and/or anticompetitive conduct, courts have found as low as a 20% market share sufficient to show attempted monopolization. See Twin City Sportservice, Inc. v. Charles O. Finley & Co., 676 F.2d 1291, 1298, 1309 (9th Cir. 1982) (finding 24% market share and attempted monopolization on basis of anticompetitive conduct); Dimmitt Agri Indus., Inc. v. CPC Int'l, Inc., 679 F.2d 516, 533 (5th Cir. 1982) (stating that market shares of 20% may raise attempted monopolization liability, depending on other characteristics of market); Lektro-Vend Corp. v. Vendo Corp., 403 F. Supp. 527, 534 (N.D. Ill. 1975) (finding company with 20% market power liable for attempt to monopolize because it extracted broad noncompetition agreements). Thus, CMIC's allegation of 37% market share may be adequate if combined with allegations of high entry barriers or anticompetitive conduct.

The Rebel Oil court defined entry barriers as "additional long-run costs that were not incurred by incumbent firms but must be incurred by new entrants," or "factors in the market that deter entry while permitting incumbent firms to earn monopoly returns." Id. at 1439. CMIC alleges in the TACC that: "there

---

[6] The court addressed this factor at the summary judgment level.

10

1  are high entry barriers to the market for project management
2  software for [AECs]"; "there are limited numbers of [AECs] who
3  use project management software, and the software must be
4  designed for the unique and complex needs of each user"; and
5  "development of project management software for [AECs] requires
6  substantial investment, research, and development."  (TACC ¶
7  112).  These allegations are sufficient to plead high entry
8  barriers because these facts allege high entry costs for new
9  participants entering the market as well as factors that would
10 deter entry into the market.
11      The presence of an expansion barrier is another factor to
12 consider in a market power analysis.  Rebel Oil, 51 F.3d at 1439.
13 The ability to control output and prices depends largely on the
14 ability of existing firms to quickly increase their own output in
15 response to a contraction by the defendant.  Id. at 1441.  A
16 competitor may not be able to increase its output if there are
17 barriers to expansion, indicating that a defendant possesses the
18 market power to control marketwide output.  Id.  CMIC alleges
19 that "existing competitors in the market have limited capacity to
20 expand their output" and that "in an attempt to increase its
21 market share by taking customers from other software providers,
22 Meridian . . . has provided . . . an aggressive incentive by
23 offering license upgrade credits."  (TACC ¶ 113).  These
24 allegations are sufficient to plead expansion barriers to
25 competitive market participants.
26     In its TACC, CMIC alleges a 37% market share as well as high
27 entry and expansion barriers.  Accordingly, these allegations are
28 /////

11

1  sufficient to plead that Meridian owns a dominant share of the
2  market for purposes of attempted monopolization.
3      Meridian asserts that CMIC's market share allegations do not
4  even purport to measure the market defined in the complaint as
5  "the market for project management software for [AECs] in the
6  United States and Canada."  (MTD at 9).  Rather, according to
7  Meridian, CMIC highlights only a slice of the relevant market,
8  that of revenues from sales to general contractors.  (Id. at 10).
9  CMIC alleges that "based on claims on Meridian's website and
10 surveys for the construction industry, [it] is informed and
11 believes that Meridian has at least 37% of the market for project
12 management software for [AECs] in the United States and Canada."
13 (TACC ¶ 111).  At this juncture, it is not up to the court to
14 determine the accuracy of such statement.  This court must accept
15 as true CMIC's factual allegations and reasonable inferences that
16 can be drawn from them.  Shell v. Shell Oil Co., 165 F. Supp. 2d
17 1096, 1105 (C.D. Cal. 2001).
18      Meridian further asserts that CMIC's allegation of a 37%
19 market share does not accurately reflect the document on which
20 the allegation is based.  (MTD at 10).  Meridian asks this court
21 to take judicial notice of the Construction Financial Management
22 Association's 2004 Information Technological Survey for the
23 Construction Industry ("CFMA Survey") for the "limited purpose of
24 assessing what the text of the document states, so as to enable
25 the Court to inquire whether CMIC's characterization of the
26 document may be accepted as valid" for a 12(b)(6) motion to
27 dismiss.  (Req. for Judicial Notice, filed Aug. 19, 2005, at 1);
28 (MTD at 10-11).  This court declines to do so for two reasons.

12

First, a survey is not the proper subject for judicial notice because its results are reasonably subject to dispute.  See Sharon P. v. Arman, Ltd., 21 Cal. 4th 1181, 1192 n.3 (1999) (declining to take judicial notice of United States Department of Justice statistical data because it is reasonably subject to dispute); Gerken v. Fair Political Practices Com., 6 Cal. 4th 707, 724 n.3 (1993) (holding that exit poll survey not proper subject for judicial notice because it can be inaccurate).  Second, CMIC asserts that its allegations for attempted monopolization are "based on claims on Meridian's website and surveys for the construction industry."  (TACC ¶ 111).  CMIC does not specifically reference the CFMA Survey in the TACC.  However, even if CMIC had relied on the CFMA Survey, this court could not consider Meridian's exhibit on a motion to dismiss.  Thus, Meridian's refutation based on the survey provides no basis for dismissal.

### 3. Pleading Significant Barriers

The third pleading requirement is the demonstration of significant barriers to entry and incapacity to increase output in the shortrun.  Rebel Oil, 51 F.3d at 1434.  The Ninth Circuit has incorporated significant barriers into the analysis of a sufficiently pled dominant share of the market.  Rebel Oil, 51 F.3d at 1438; see Am. Prof'l Testing Serv. v. Harcourt Brace Jovanovic Legal & Prof'l Publs., 108 F.3d 1147, 1154 (9th Cir. 1997).  As previously discussed within the context of the dominant market share, CMIC has alleged both entry and output barriers.  (TACC ¶¶ 112-13).  These allegations are sufficient to satisfy the third pleading requirement.

Accordingly, because CMIC has properly plead a relevant market, a dominant share of the market, and significant barriers, it has sufficiently alleged a dangerous probability of achieving monopoly power.

### B.  Causal Antitrust Injury

Meridian asserts that CMIC fails to plead causal antitrust injury because the TACC does not allege that Meridian took any actions or measures addressed to any competitor other than CMIC. (MTD at 12).  Meridian contends that CMIC "must *demonstrate* that [Meridian's] conduct intended to or did have some anticompetitive effect beyond [its] own loss of business or the market's loss of a competitor."  (MTD at 12) (emphasis added); see Cal. Computer Prods., Inc. v. Int'l Bus. Mach. Corp., 613 F.2d 727, 732 (9th Cir. 1979).

Here, CMIC need only *plead* antitrust injury, which requires that it allege sufficient facts from which the court can discern the elements of an injury resulting from an act forbidden by the antitrust laws.  Newman v. Universal Pictures, 813 F.2d 1519, 1522 (9th Cir. 1987).  CMIC alleges in the TACC that as a result of Meridian's actions, it "has suffered antitrust injury, has suffered the disruption of its relationships with [customers] and has lost profits and good will."  (TACC ¶ 115).  Moreover, CMIC alleges that "Meridian's conduct has injured competition and consumers" and that "its acts have an anticompetitive effect of harming the competitive process, limiting consumer choice, and harming consumers."  (TACC ¶ 116).  These allegations are sufficient to plead causal antitrust injury.

/////

14

For the foregoing reasons, CMIC has sufficiently stated facts to support a claim against Meridian for attempted monopolization. Thus, Meridian's motion to dismiss CMIC's attempted monopolization claim is DENIED.

## II.  Third Counterclaim for Interference with Prospective Economic Advantage

According to Meridian, the court must dismiss CMIC's tortious interference with prospective economic advantage claim because CMIC must plead and prove that Meridian's alleged interference was independently wrongful by some measure beyond the fact of the interference itself. (MTD at 13); Della Penna v. Toyota Motor Sales, USA, Inc., 11 Cal. 4th 376, 393 (1995). Meridian contends that the only allegedly wrongful act is the "implied threat" to the Walsh, O'Neil, and McCarthy companies that Meridian would sue them if they licensed project management software from CMIC. (MTD at 13). Meridian further asserts that courts have rejected, as a matter of law, attempts to derive an "implied threat" of litigation from allegations much stronger than those proffered by CMIC. (MTD at 14).

In contrast, CMIC asserts that an implied threat is not an element in a claim for interference with prospective economic advantage. (Opp'n at 7); Della Penna, 11 Cal. 4th at 389. CMIC agrees that a party pursuing a claim for interference must allege that the interference was independently wrongful. CMIC argues, however, that Meridian's interference was independently wrongful because the false statement to CMIC's potential customers, that CMIC violated Meridian's copyright, was fraudulent. (Opp'n at
/////

15

1  8); (see also TACC ¶ 124) (stating that Bodrozic's statements
2  were false . . . and Bodrozic knew his statements were false).
3     This court agrees with CMIC.  In <u>Visto Corp. v. Sproqit</u>
4  <u>Techs., Inc.</u>, 360 F. Supp. 2d 1064, 1067 (N.D. Cal. 2005), the
5  court described independently wrongful conduct:

> [A]lthough the California courts have not provided a definitive meaning of wrongful conduct . . . the California Court of Appeal acknowledged that various courts have defined that phrase as follows: (1) conduct that is independently tortious or a restraint of trade; (2) conduct violating a statute, regulation, a recognized rule of common law, or an established standard of a trade or profession, or (3) conduct that is illegal, unfair, or immoral according to common understandings of society.

12 (citations omitted).  Given the above standard, CMIC has
13 alleged the element of independently wrongful conduct
14 because it has alleged that Meridian's claims of copyright
15 infringement were false.  <u>Id.</u>; (TACC ¶ 124).
16    Therefore, CMIC has sufficiently stated facts to
17 support a claim against Meridian for alleged interference
18 with prospective economic advantage.  Meridian's motion to
19 dismiss CMIC's claim for alleged interference with
20 prospective economic advantage is thus DENIED.
21 /////
22 /////
23 /////
24 /////
25 /////
26 /////
27 /////
28 /////

**CONCLUSION**

For the reasons set forth above, Meridian's motion to dismiss the Second Counterclaim for attempted monopolization and the Third Counterclaim for interference with prospective economic advantage is DENIED.

IT IS SO ORDERED.

DATED: October 14, 2005

/s/ Frank C. Damrell Jr.
FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE