UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MERIDIAN PROJECT SYSTEMS, INC.,

     Plaintiff,

  v.                  NO. CIV. S-04-2728 FCD DAD

                              <u>MEMORANDUM AND ORDER</u>

HARDIN CONSTRUCTION COMPANY, LLC, and COMPUTER METHODS INTERNATION CORP.,

     Defendants.

_____/

COMPUTER METHODS INTERNATION CORP., and HARDIN CONSTRUCTION COMPANY, LLC,

      Counterclaimants,

  v.

MERIDIAN PROJECT SYSTEMS, INC., and JAMES OLSEN, JOHN BODROZIC, and MIKE CARRINGTON,

      Counterdefendants.

_____/

1

----ooOoo----

This matter is before the court on plaintiff Meridian Project Systems, Inc.'s ("Meridian") motion for partial summary judgment on its claims of breach of contract and copyright infringement against defendant Hardin Construction Company, LLC ("Hardin"). Defendant Hardin opposes the motion. For the reasons set forth below,[1] plaintiff's motion is GRANTED in part and DENIED in part.[2]

**BACKGROUND**

Meridian is a software company that provides software solutions related to the management of physical infrastructure

---

[1]    Because oral argument will not be of material assistance, the court orders the matter submitted on the briefs. E.D. Cal. L. R. 78-230(h).

[2]    Pursuant to a protective order issued by the magistrate judge assigned to this case, the parties submitted all documents relating to plaintiff's motion for partial summary judgment under seal. The court may, on its own motion, unseal portions of the record. See Encyclopedia Brown Productions, Ltd. v. Home Box Office, Inc., 26 F. Supp. 2d 606 (S.D.N.Y. 1998); Bijan Designer for Men, Inc. v. Katzman, 1997 WL 51504 (S.D.N.Y. 1997).

On April 3, 2006, the court issued a minute order, informing the parties of its intent to unseal all documents submitted in relation to this motion and ordering any oppositions by the parties to be filed by April 5, 2006. Plaintiff filed a letter stating its non-opposition to the unsealing of the documents. (Letter regarding unsealing documents, filed Apr. 5, 2006). Defendants Hardin and CMIC object only to the unsealing of Exhibit A to the declaration of Scott W. Pink, filed December 23, 2005, due to the disclosure of non-public information that could cause CMIC harm in the marketplace. (Statement of Defs. regarding unsealing documents, filed Apr. 5, 2006).

Accordingly, the court unseals all documents submitted in relation to plaintiff's motion for partial summary judgment, except Ex. A to the declaration of Scott W. Pink, filed Dec. 23, 2005. (Docket numbers 94-96, 98, 115-121, 139-145 and 159). The court will refer to information contained in this exhibit, but not to any content that discloses information that defendants assert could cause CMIC harm in the marketplace.

1   management and programs.  (Def. Hardin's Resp. to Pl.'s Statement

2   of Undisputed Facts ("RUF"), filed Feb. 3, 2006, ¶ 1).  One of

3   Meridian's primary products is a project management software

4   called Prolog Manager ("Prolog"), which enables users to automate

5   all aspects of the construction process, from project design to

6   closeout.  (RUF ¶¶ 2-3).  Defendant Hardin is a construction

7   company and customer of Meridian for the Prolog product.  (RUF ¶

8   16).

9       Starting in 1996, Hardin purchased licenses to use various

10  versions of Prolog Manager.  (RUF ¶ 17).  As part of its standard

11  practice and policy regarding the license and delivery of Prolog

12  versions 5.1 and 6.0, Meridian sends each customer a standard

13  form box containing a CD loaded with the Prolog software.  (RUF ¶

14  21).  The box containing the Prolog CD also contains Meridian's

15  applicable End User License Agreement ("EULA") and a user manual.

16  (RUF ¶ 22).  The EULA provides restrictions relating to the use

17  of Prolog.  (RUF ¶ 30).  Hardin had the ability to return the

18  Prolog product if it did not agree with the EULA, but did not do

19  so; Hardin used Prolog in connection with its business since 1996

20  without ever returning a single copy that it had registered and

21  installed.  (RUF ¶ 25).  Hardin never objected to the terms of

22  the EULA.  (RUF ¶ 26).

23      In or around 2000, Hardin first discussed with defendant

24  Computer Methods International Corp. ("CMIC") the possibility of

25  integrating Prolog with CMIC's existing accounting package.  (RUF

26  ¶ 33).  In late March 2001, however, Hardin's Executive Committee

27  decided to switch from Meridian's project management software,

28  Prolog, to CMIC's project management software.  (RUF ¶ 34).

3

Hardin and CMIC discussed producing a document, describing the project management software specifications, that could be included as part of their contract. (Dep. of Danny Philip Bensley, attached as Ex. B to Decl. of Scott W. Pink ("Pink Decl."), filed Jan. 3, 2006, ("Bensley Dep.") at 82:15-23).  It was further discussed that a Hardin employee, Chris Wright, would prepare that document. (Id. at 82:24-25).

Wright prepared drafts of desired specifications to be included in the Hardin-CMIC contract. (Id. at 269:3-6).  On April 12, 2001, Danny Bensley, Chief Information Officer of Hardin, sent Jeff Weiss, Vice President of Sales and Marketing for CMIC, an e-mail containing the drafts prepared by Wright. (Id. at 268:20-269:10).  Meridian asserts that the attachments to this e-mail contained over thirty pages of detailed descriptions copied from the Prolog help files. (See Supplemental Decl. of Thomas A. McManus ("Supp. McManus Decl."), filed Feb. 17, 2006, ¶ 3; Ex. A to Supp. McManus Decl. ("E-mail Attachments")).

On April 27, 2001, Hardin and CMIC entered into a Master Software Acquisition Agreement for CMIC's software package. (RUF ¶ 42).  This agreement contained several attachments, including an attachment named Schedule H. (RUF ¶ 57).  Schedule H is the schedule attached to the CMIC that contains the project management specifications and is also referred to as the project management requirements document. (Bensley Dep. at 90:15-18; Dep. of Jeffrey R. Traeger, attached as Ex. A to Pink Decl., filed Jan. 3, 2006, ("Traeger Dep.") at 247:12-14, filed under seal).  Wright produced the specifications that were incorporated into Schedule H. (Bensley Dep. At 83:4-7).  The Schedule H

4

document was signed by Jeffrey Traeger, Senior Vice President for Hardin, and by Jeff Weiss.  Meridian asserts that a large portions of the Schedule H document was copied from Prolog's help files text.  (See Supp. McManus Decl. ¶ 4).

Meridian filed claims against defendant Hardin for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, interference with contractual relations, intentional interference with prospective economic advantage, unfair competition, and copyright infringement.  Meridian's claims for breach of contract and copyright infringement against defendant Hardin are based upon Hardin's alleged copying of Prolog help file language into the e-mail attachments and the Schedule H document.  On December 23, 2005, Meridian filed a motion for partial summary judgement.  Meridian seeks summary adjudication regarding Hardin's liability for breach of the EULA and for copyright infringement.  Meridian does not seek determination of damages for the breach of contract claim, nor determination of the applicability of affirmative defenses available to Hardin for the copyright infringement claim.  Hardin opposes the motion.

**STANDARD**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Under this standard, an issue is "genuine" if there is sufficient evidence for a reasonable jury to find for the nonmoving party and a fact is "material" when it may affect the outcome of the case under

1   the substantive law that provides the claim or defense.  Anderson

2   v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  The

3   determination is made based solely upon admissible evidence.  Orr

4   v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002).

5   Furthermore, the court must view inferences made from the

6   underlying facts in the light most favorable to the nonmoving

7   party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

8        The moving party has the initial burden to demonstrate the

9   absence of a genuine issue of material fact.  Celotex Corp. v.

10  Catrett, 477 U.S. 317, 323 (1986).  If the moving party is

11  without the ultimate burden of persuasion at trial, it may either

12  produce evidence negating an essential element of the opposing

13  party's claim, or demonstrate that the nonmoving party does not

14  have enough evidence to carry its ultimate burden of persuasion

15  at trial.  Nissan Fire & Marine Insurance Co. v. Fritz Companies,

16  Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).  If the moving party

17  meets this initial requirement, the burden then shifts to the

18  opposing party to go beyond the pleadings and set forth specific

19  facts that establish a genuine issue of material fact remains for

20  trial.  Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475

21  U.S. 574, 585-87 (1986).  Summary judgment should not be granted

22  where "there are any genuine factual issues that properly can be

23  resolved only by a finder of fact because they may reasonably be

24  resolved in favor of either party."  Anderson, 477 U.S. at 250.

25       Following this same rubric, a court may grant summary

26  adjudication on part of a claim or defense, based on the

27  standards applicable to a motion for summary judgment.  See Fed.

28  R. Civ. P. 56(a),(b); State of California v. Campbell, 138 F.3d

772, 780 (9th Cir. 1998).

**ANALYSIS**

**A.    Breach of Contract**

Plaintiff Meridian moves for partial summary judgment on its claim of breach of contract against defendant Hardin.  Meridian seeks to establish only liability through this motion.[3]  Hardin argues that summary judgment is inappropriate because (1) the Ninth Circuit has not decided whether an End User Licence Agreement ("EULA") of the type used by Meridian is valid and enforceable; (2) plaintiff's contract claims are preempted by the federal Copyright Act; and (3) the terms of the contract are ambiguous and cannot be resolved on a motion for summary judgment.

**1.    End User License Agreement**

Hardin argues that plaintiff's motion for partial summary judgment should be denied because the validity of "shrinkwrap licenses"[4] has not been decided by the Ninth Circuit.  However, the validity of "shrinkwrap licenses" is a question of law, not a

---

[3]    Hardin asserts in its opposition that summary judgment should not be granted because plaintiff has not presented evidence of damages.  However, Meridian brings this motion for the limited purpose of establishing that there was a breach of contract by defendant.  Therefore, evidence of damages is not dispositive of plaintiff's motion for partial summary judgment.

[4]    "The 'shrinkwrap license' gets its name from the fact that retail software packages are covered in plastic or cellophane 'shrinkwrap,' and some vendors . . . have written licenses that become effective as soon as the customer tears the wrapping from the package."  ProCD, Inc. v. Zeidenberg, 86 F.3d 1447, 1449 (7th Cir. 1996).  Meridian's EULA does not become effective upon the tearing of shrinkwrap, but the license is contained within the packaging of the Prolog software, not on the outside of the box.  As such, courts consider this type of EULA a "shrinkwrap license."  See id.

question of fact for the jury.  Therefore, this question may

properly be resolved on plaintiff's motion for summary judgment.

See Local Motion, Inc. v. Niescher, 105 F.3d 1278, 1280 (9th Cir.

1997) (citing Hanagami v. China Airlines, Ltd., 688 P.2d 1139,

1145 (1984)).

Whether contracts such as Meridian's EULA are valid is a

much-disputed question.  See ProCD, Inc., 86 F.3d 1447; Step-

Saver Data Sys., Inc. v. Wyse Tech., 939 F.2d 91 (3d Cir. 1991);

Softman Products Co., LLC., v. Adobe Sys., Inc., 171 F. Supp. 2d

1075, 1088 (C.D. Cal. 2001).  Courts that have found these types

of licenses invalid characterize them as contracts of adhesion

that are unacceptable pursuant to the Uniform Commercial Code.

Softman Products, 171 F. Supp. 2d at 1088 (citing Step-Saver, 939

F.2d 91; Vault Corp. v. Quaid Software Ltd., 847 F.2d 255 (5th

Cir. 1988))[5]; Klocek v. Gateway, Inc., 104 F. Supp. 2d 1332 (D.

Kan. 2000).  However, other courts have held that these types of

licences are valid and enforceable contracts.  See ProCD, 86 F.3d

1447 (7th Cir. 1996); see also Lexmark Int'l, Inc. v. Static

Control Components, Inc., 387 F.3d 522, 563 n.10 (6th Cir. 2004);

Hill v. Gateway 2000, Inc., 105 F.3d 1147 (7th Cir. 1997); Mudd-

[5]    These cases are not directly on point with the issue
presented by Meridian's EULA in this case.  In Softman, the court
did not reach the issue of whether "shrinkwrap licenses" were
enforceable because the court found that the plaintiff never
loaded the software, and thus never assented to the EULA.  171 F.
Supp. 2d at 1088.  In Step-Saver, the court was presented with a
battle-of-the-forms case, in which the parties exchanged forms
with different conditions and obligations, and the court
addressed whether the "shrinkwrap license" controlled.  939 F.2d
91.  Finally, in Vault, the court did not reach the issue of the
validity of "shrinkwrap licenses" generally because the court
found that the buyer knew the terms of the license before
purchasing the software.  847 F.2d at 268-70.

1  Lyman Sales & Serv. Corp. v. United Parcel Service, Inc., 236 F.

2  Supp. 2d 907, 911-12 (N.D. Ill. 2002); I. Lan Sys., Inc. v.

3  Netscout Serv. Level Corp., 183 F. Supp. 2d 328 (D. Mass. 2002).

4  In ProCD, the Seventh Circuit held that "shrinkwrap licences" are

5  enforceable, relying on the policy considerations behind such

6  licences.  ProCD, 86 F.3d at 1451.  The Eastern District of

7  California favorably cited the Seventh Circuit's approach to

8  these types of licences.  Pollstar v. Gigimania, Ltd., 170 F.

9  Supp. 2d 974, 980-81 (E.D. Cal. 2000) (finding that a "browse

10 wrap" license may be arguably enforceable and valid).  The

11 Northern District of California has also implicitly upheld the

12 validity of licenses similar to plaintiff's EULA.  See Adobe Sys.

13 Inc. v. Stargate Software Inc., 216 F. Supp. 2d 1051 (N.D. Cal.

14 2002); Adobe Sys. Inc. v. One Stop Micro, Inc., 84 F. Supp. 2d

15 1086 (N.D. Cal. 2000).

16      In ProCD, the court considered various common transactions

17 where the consumer purchases prior to getting the detailed terms

18 of the contract.  ProCD, 86 F.3d at 1450.  For example, an

19 insurance buyer remits the premium prior to getting the policy; a

20 traveler reserves a seat, pays and then, receives a ticket, which

21 may contain elaborate terms and conditions, accepted upon use of

22 the ticket; a concert or theater goer also purchases the ticket

23 in advance and agrees to conditions of attending the performance.

24 Id. at 1451.  The court noted that these transactions could be

25 structured differently in order to allow the consumer to agree

26 first and pay later, but nonetheless, the contracts are

27 enforceable in the pay first, agree later form.  Id.

28      The ProCD court also noted the policy considerations in the

9

software industry.  Id. at 1451-52.  In particular, the court
noted that only a minority of sales take place over the counter,
where there are boxes to peruse.  Id. at 1451.  Rather, many
purchases are made over the Internet by consumers who have never
seen a box.  Id.  As such, the reality of the industry lends
little support to the argument that the license should not be
enforceable because the consumer was not able to read the license
on the box before buying the product.  Therefore, the Seventh
Circuit upheld the validity of the "shrinkwrap license" where the
consumer paid first, received the license upon opening the box,
and had an opportunity to return the software if the consumer
"conclude[d] that the terms of the license make the software
worth less than the purchase price."  Id. at 1452.

       The court finds the Seventh Circuit's rationale in ProCD
compelling.  The EULA is not rendered invalid merely because
defendant purchased the Prolog software and then received the
EULA after opening the package.  There is no dispute that
defendant purchased licenses to use various versions of
plaintiff's Prolog software.  (RUF ¶ 17).  Defendant had notice
of the EULA, and the EULA was included in the box containing the
software and the user manual.  (RUF ¶¶ 17, 22).  Defendant does
not dispute that it had an opportunity to return Prolog to
Meridian if it did not agree to the EULA, but did not do so.
(RUF ¶ 24).  Further, defendant never objected or sought an
amendment to the terms of the EULA.  (RUF ¶¶ 26-27).  Under these
facts, this is not an unconscionable contract or a contract of
adhesion.  Therefore, Meridian's EULA may be an enforceable
contract.

1           2.    Preemption by the Copyright Act

2           Defendant Hardin also argues that even if the EULA is a

3    valid contract, it is preempted by the Copyright Act, 17 U.S.C. §

4    301(a).  The Copyright Act protects the rights of reproduction,

5    preparation of derivative works, distribution, and display.  17

6    U.S.C. § 106; Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079,

7    1089(9th Cir. 2005).  Section 301 provides, in relevant part,

8    that "all legal or equitable rights that are equivalent to any of

9    the exclusive rights within the general scope of copyright" are

10   preempted by federal law.  17 U.S.C. § 301.  Therefore, in order

11   for claims under state law to be preempted, (1) the work at issue

12   must come within the subject matter of copyright, and (2) the

13   state law rights must be equivalent to the exclusive rights of

14   copyright.  Grosso v. Miramax Film Corp., 383 F.3d 965, 968 (9th

15   Cir. 2004).

16         The dispositive preemption issue in this case is whether the

17   rights protected by Meridian's EULA are equivalent to the rights

18   protected by copyright.  To survive preemption, the state law

19   claim must include an "extra element" that makes the right

20   asserted qualitatively different from those protected by the

21   copyright act.  Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079,

22   1089 (9th Cir. 2005) (citing Summit Mach. Tool Mfg. v. Victor CNC

23   Sys., 7 F.3d 1434, 1439-40 (9th Cir. 1993)).  In Altera, the

24   Ninth Circuit held that "[a] state law tort claim concerning the

25   unauthorized use of the software's end product is not within the

26   rights protected by the federal Copyright Act."  Id. at 1090.

27   The Altera court also noted that "[m]ost courts have held that

28   the Copyright Act does *not* preempt the enforcement of contractual

11

rights." Id. (citing Bowers v. Baystate Techs. Inc., 320 F.3d 1317, 1323-24 (Fed. Cir. 2003); Nat'l Car Rental Sys. Inc. v. Computer Assocs. Int'l, 991 F.2d 426, 431 (8th Cir. 1993); ProCD, Inc. v. Zeidenberg, 86 F.3d 1447 (7th Cir. 1996)); see also Wrench LLC v. Taco Bell Corp, 256 F.3d 446, 457 (6th Cir. 2001); Taquino v. Teledyne Monarch Rubber, 893 F.2d 1488, 1501 (5th Vir. 1990); Acorn Structures v. Swantz, 846 F.2d 923, 926 (4th Cir. 1988).

In reaching its finding of no federal preemption in Altera, the Ninth Circuit found compelling the Seventh Circuit's analysis of a similar issue in ProCD.[6] Id. at 1089. In ProCD, the Seventh Circuit enforced contractual rights provided by the "shrinkwrap license" which allowed only for the private use of the software. ProCD, 86 F.3d at 1454-55. The court focused its analysis on the purpose of federal preemption; to prevent "states from substituting their own regulatory systems for those of the national government." Id. at 1455. The Seventh Circuit noted that courts usually read preemption clauses to leave private contracts unaffected. Id. at 1454 (citing American Airlines, Inc. v. Wolens, 513 U.S. 219 (1995). As such, the court analogized that "[j]ust as § 301 [of the Copyright Act] does not itself interfere with private transactions in intellectual property, so it does not prevent states from respecting those transactions." Id. "A copyright is a right against the world. Contracts, by contrast, generally affect only their parties;

---

[6]     The Ninth Circuit also favorably discussed the Eight Circuit's finding of no federal preemption in National Car Rental System, 991 F.2d at 432, where the court distinguished between use and reproduction. Altera, 424 F.3d at 1089-90.

strangers may do as they please, so contracts do not create 'exclusive rights.'" Id. at 1454. The "extra element" was the mutual assent and consideration required by a contract claim. See id.; see also Bowers, 320 F.3d at 1325. Therefore, the enforcement of the "shrinkwrap license" involved in that case did not interfere with the "attainment of national objectives" within the domain of § 301(a). Id. at 1455.[7]

In this case, Hardin seeks to dismiss Meridian's breach of contract claim on the basis of federal preemption. However, Meridian seeks to enforce the terms of its EULA through this action, very similar to the type of license analyzed by the Seventh Circuit in ProCD. See id. at 1455. This type of license is "a simple two-party contract" that, whether general or restrictive, "is not 'equivalent to any of the exclusive rights within the general scope of copyright,'" and therefore may be enforced." Id.

Meridian also argues that the breach of contract claim is not preempted because the EULA prohibits defendant from reverse engineering the Prolog product. Reverse engineering is not within the scope of the exclusive rights of copyright. See 17 U.S.C. § 106. Section 2(b) of the EULA provides that the licensee agrees not to reverse engineer the Software. (Traeger Dep. at 234:22-235:10, filed under seal). To the extent that Meridian's EULA prohibits reverse engineering by defendant

---

[7] The Seventh Circuit did acknowledge that some applications of the law of contract could interfere with the attainment of nations objectives and thus come within the domain of § 301(a). Id. However, general enforcement of the "shrinkwrap license" did not present such a problem. Id.

Hardin, plaintiff's breach of contract claim is also not preempted because the contract protects a qualitatively different right than those protected by the Copyright Act.  Bowers, 320 F.3d at 1324-25.

### 3.   Terms of the Contract

Finally, defendant contends that summary judgment is inappropriate because the terms of the EULA are ambiguous.  Under California law, interpretation of a contract is an issue of law if "(a) the contract is not ambiguous; or (b) the contract is ambiguous but no parole evidence is admitted or the parole evidence is not in conflict."  Centigram Argentina, S.A. v. Centigram Inc., 60 F. Supp. 2d 1003, 1007 (N.D. Cal. 1999) (citing WYDA Assocs. v. Merner, 42 Cal. App. 4th 1702, 1710 (1996).  Whether a contract provision is ambiguous is a question of law.  "[W]hen two equally plausible interpretations of the language of a contract may be made parole evidence is admissible to aid in interpreting the agreement."  Centigram Argentina, 60 F. Supp. 2d at 1007 (internal quotations omitted).  Further, a party may present extrinsic evidence to show that a facially unambiguous contract is susceptible of another interpretation. Maffei v. Northern Ins. Co., 12 F.3d 892, 898 (9th Cir. 1993) (citing Brobeck, Phleger & Harrison v. Telex Corp., 602 F.2d 866, 873 (9th Cir. 1979).  If a contract provision is ambiguous, summary judgment is generally improper "because differing views of the intent of parties will raise genuine issues of material fact."  Id. (citing United States v. Sacramento Mun. Util. Dist., 652 F.2d 1341, 1344 (9th Cir. 1981)).

/////

14

1    Meridian contends that Hardin copied Meridian's "help files"

2    and attached them as part of the e-mail attachments sent to

3    defendant CMIC and included them in the Schedule H document.

4    Meridian asserts that Hardin breached the EULA in doing so

5    because it copied and distributed copies of Prolog "Software or

6    Documentation" as prohibited by section 2(a) of the EULA.  Hardin

7    contends that it is unclear that the "help files" are either part

8    of Meridian's "Software" or "Documentation" under the terms of

9    the EULA.

10    In support of its contention that the terms of the EULA is

11    ambiguous, Hardin cites to the EULA.  Section 1 of the EULA

12    provides that the licensee is supposed to use the "software in

13    accordance with the Documentation."  Hardin also points statments

14    made by plaintiff's director of operations, J.R. Hamel, that

15    Meridian sends each customer a box containing a CD loaded with

16    Prolog software.  (Declaration of J.R. Hamel in Supp. of Mot. For

17    Summ. J. ("Hamel Decl."), filed Dec. 23, 2005, ¶ 9).  Hardin

18    contends that if the CD contains the "Software," the

19    "Documentation" must be the user manual and EULA also provided in

20    the box.  Therefore, Hardin argues that copying language from a

21    computer screen (specifically the "help files") neither involves

22    copying the "Software" or the "Documentation."

23    Hardin also presents the deposition of its vice-president,

24    Jeff Traeger, which stated that a Hardin employee probably copied

25    portions of Prolog into the e-mail attachments sent to CMIC.

26    (Traeger Dep. at 253:21-23, filed under seal).  However, Traeger

27    also denied that Hardin sent copies of the software to CMIC

28    because he believed that action would violate the EULA.  (Id. at

15

225:8-14, filed under seal).  Hardin argues that these statements, taken together, demonstrate that Hardin did not intend or understand the term "Software" to include help file text that appeared on the computer screen.

　　　Meridian argues that the "help files" text is both "Software" and "Documentation."  The text is Software" because it is part of the on-screen tutorial that is contained within the Prolog software and the text is "Documentation" because such files are an on-screen document that accompanies the software.  Meridian's own argument demonstrates the ambiguity of the terms included in its EULA.  Meridian argues that any ambiguity is meaningless because the "help files" can be considered *either* "Software" or "Documentation" or can be considered to be *both* "Software" and "Documentation."

　　　However, the court finds that the help files could also be considered *neither* "Software" or "Documentation."  Defendant Hardin has presented evidence indicating that it did not understand or interpret the EULA to encompass the "help files" text as either "Software" or "Documentation."  As such, it has raised an ambiguity regarding the meaning of the terms in the EULA as applied to the help files at issue.  This ambiguity precludes the court from interpreting the terms of the contract on a motion for summary judgment.  See <u>Maffei v. Northern Ins. Co.</u>, 12 F.3d at 898.  Therefore, plaintiff's motion for summary judgment for its breach of contract claim against defendant Hardin is DENIED.

/////

/////

**B.   Copyright Infringement**

Plaintiff Meridian also moves for partial summary judgment on its claim of copyright infringement against defendant Hardin. Meridian seeks summary adjudication on the issue of whether defendant Hardin infringed upon plaintiff's copyright in the Prolog software when it allegedly copied portions of Prolog's help files text into e-mail attachments sent to defendant CMIC and into the Schedule H document.  Plaintiff does not seek adjudication of defendant Hardin's affirmative defenses, such as fair use, to the alleged infringement.  Because defendant's affirmative defenses were not raises in plaintiff's initial summary judgment motion, the court will not address the issues raised by the affirmative defenses; those defenses remain viable in the litigation.  <u>See</u> <u>Stillman v. Travelers Ins. Co.</u>, 88 F.3d 911, 913-14 (11th Cir. 1996); <u>Books a Million, Inc. v. H & N Enterprises, Inc.</u>, 140 F. Supp. 2d 846, 851 (S.D. Ohio 2001).

The Copyright Act gives the holder of a registered copyright a right to sue.  17 U.S.C. § 501(b).  To prevail on a claim of copyright infringement, the plaintiff must prove (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.  <u>Feist Publications, Inc. v. Rural Tel. Serv. Co.</u>, 499 U.S. 340, 361 (1991) (citing <u>Harper & Row, Publishers, Inc. v. Nation Enters.</u>, 471 U.S. 539, 548 (1985)). Defendant Hardin contends that plaintiff does not have a valid copyright in the help files text at issue because it not "protectable expression."  Hardin also contends that summary judgment is improper because issues of fact remain regarding the copying of plaintiff's help files.

17

### 1.   Valid Copyright

To qualify for copyright protection, the work must be (1) copyrightable subject matter; 2) original to the author; and (3) fixed in a tangible medium of expression.  See Feist, 499 U.S. at 348.  Under the Copyright Act, a registration certificate is prima facie evidence of the validity of the copyright and the facts stated in the certificate.  17 U.S.C. § 410(c); Johnson Controls, Inc. v. Phoenix Controls Sys., Inc., 886 F.2d 1173, 1175 (9th Cir. 1989).  Meridian's Prolog Manager 5.1 has been registered with the U.S. Copyright Office.  (RUF ¶ 8; Ex. A to Declaration of Gabriel Nacht in Supp. of Mot. for Summ. J., filed Dec. 23, 2005).  This registration is prima facie evidence of ownership by Meridian and of originality.  See Johnson, 886 F.2d at 1175.  Defendant Hardin does not dispute that the Prolog software was fixed in a tangible medium of expression.

### 2. Copying

In order for plaintiff to prevail on its claim of copyright infringement, it must present evidence of copying by defendant Hardin.  Apple Computers, 35 F.3d at 1442.  "Copying may be shown by circumstantial evidence of access and substantial similarity of both the general ideas and expression between the copyrighted work and the allegedly infringing work."  Id.  In this case, access is clear.  Defendant Hardin licensed the Prolog program from plaintiff Meridian. (RUF ¶ 17).  Hardin used Prolog in connection with its business since 1996.  (RUF ¶ 25).  Therefore, the gravamen of the parties' dispute revolves on the analysis of substantial similarity.

/////

The Ninth Circuit has established a two-part test for analyzing whether copying sufficient to constitute infringement has taken place. Id.; Krofft, 562 F.2d at 1164. The test involves both an "extrinsic" and "intrinsic" component. Id. The extrinsic prong requires an analysis of the similarity of ideas and expression based upon external criteria, such as analytic dissection and expert testimony. Id. The intrinsic prong requires the analysis of the similarity of expression from the standpoint of the ordinary reasonable observer without expert assistance. Id. The intrinsic prong is a subjective test of expression. Id.

The Ninth Circuit has held that the extrinsic analysis should be performed by the court as the initial inquiry in determining whether illicit copying took place because the inquiry will define the scope of copyright protection before considering the work as a whole. Id. at 1443 (citations omitted). The Ninth Circuit has also set forth a three step analysis to guide courts in the discussion of the extrinsic component of the test. Id. First, "the plaintiff must identify the source of the alleged similarity between his work and the defendant's work." Id. Second, "the court must determine whether any of the allegedly similar features are protected by copyright." Id. Third, the court must set the appropriate standard for a subjective comparison of the works, depending on whether the copyright protection is "broad" or "thin." Id.

Defendant Hardin asserts that plaintiff is claiming exclusive ownership over concepts such as "request for information" and "submittals." Hardin contends that these

19

concepts are not protected by plaintiff's copyright.  However, defendant misstates the basis of Meridian's copyright infringement claim.  Meridian's claim of copyright infringement is based upon Hardin's alleged copying of the Prolog program's help files text in its attachments e-mailed to CMIC and in the Schedule H document.

Meridian's claims are not based upon infringement of an idea, which is clearly not within the scope of copyright protection.  See Feist, 499 U.S. at 344-45 (1991) ("The most fundamental axiom of copyright law is that 'no author may copyright his ideas or the facts he narrates.'") (quoting Harper & Row, 471 U.S. at 556).  Rather, Meridian's claim is based upon infringement of the expression of idea, specifically, the manner it which it chose to convey the facts set forth in the help files text.  The original expression of an idea is protected by copyright.  See id. at 348 ("Others may copy the underlying facts from the publication, but not the precise words used to present them.").

Although the manner in which facts are expressed is protected by copyright, the extent of protection may be narrowed by other limiting doctrines.  The primary objective of copyright is "[t]o promote the Progress of Science and useful Arts."  Art. I., § 8, cl. 8.; Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 156 (1975).  Feist, 499 U.S. at 349.  "To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work."  Feist, 499 U.S. at 349-50.  This principle is known as the idea/expression dichotomy and applies to all

20

1   works of authorship.  Id. at 350.  "The scope of protection or

2   the degree of substantial similarity required to show

3   infringement will vary according to the type of work and the

4   ideas expressed in it."  Smart Inventions, Inc. v. Allied

5   Communications Corp., 94 F. Supp. 2d 1060, 1066 (C.D. Cal. 2000)

6   (quoting Landsberg v. Scrabble Crossword Game Players, Inc., 736

7   F.2d 485, 488 (9th Cir. 1984).  The idea/expression dichotomy

8   serves to severely limit the scope of protection in fact-based

9   works.  Feist, 499 U.S. at 350.  "Some ideas can be expressed in

10  myriad ways, while others allow only a narrow range of

11  expression."  Landsberg, 736 F.2d at 488.  Authors that convey

12  facts in original works often can only choose from a narrow range

13  of expression.  Similarly, "a subsequent author wishing to

14  express the same facts will probably be required to use similar

15  language."  Smart Inventions, 94 F. Supp. 2d at 1066.  Therefore,

16  the scope of protection afforded factual works is thin.  Id.;

17  Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442 (9th

18  Cir. 1994) ("[C]onsidering the . . . limited number of ways that

19  the basic ideas of the Apple GUI can be expressed differently, we

20  conclude that only 'thin' protection . . . is appropriate.").

21      The Ninth Circuit also recognizes the application of

22  limiting doctrines that narrow the scope of copyright protection

23  available to certain works.  The merger doctrine serves as one

24  such limitation.  Apple Computer, 35 F. 3d at 1444.  "When an

25  idea or an expression are indistinguishable, or 'merged,' that

26  expression will only be protected against nearly identical

27  copying."  Id. (citing Sid & Marty Krofft Television Prods., Inc.

28  v. McDonald's Corp., 562 F.2d 1157, 1167-68 (9th Cir. 1977);

21

Herber Rosentahl Jewelry Corp. v. Kalpakian, 446 F.2d 738, 742
(9th Cir. 1971)).  The Ninth Circuit explained that the limiting
doctrine of *scenes a faire* is closely related to the merger
doctrine.[8]  Id.  The *scenes a faire* doctrine provides that where
certain features are, as a practical matter indispensable, or at
least standard, in the treatment of a given issue, they are
treated like ideas.  Frybarger v. Int'l Bus. Machines Corp., 812
F.2d 525 (9th Cir. 1987).  "[T]he mere indispensable expression
of these ideas . . . . may be protected only against virtually
identical copying."  Id.; Rachel v. Banana Republic, Inc., 831
F.2d 1503, 1507 (9th Cir. 1987).

At issue in this case, is the protection afforded to
Meridian's help files text in the Prolog program.  Such text is
entitled to at least some protection.  See Harper House, Inc v.
Thomas Nelson, Inc., 889 F.2d 197, 205 (9th Cir. 1989) (finding
the text of instructions protectable by copyright).  Meridian
presents evidence that Prolog's help files provide text
describing the features, functions, and operations of the
program, including their selection, sequence, and organization.

---

[8]     Defendant Hardin argues that the *scenes a faire*
doctrine applies to the facts of this case.  Plaintiff Meridian
interprets this doctrine as an affirmative defense, which was not
raised in their initial motion for summary judgment and
therefore, should not be addressed by the court on this motion.
However, the merger doctrine and the related *scenes a faire*
doctrine serve as limiting principles that narrow the extent of
copyright protection, not as affirmative defenses.  As such, the
court will address these arguments because they directly relate
to plaintiff's motion for partial summary judgment regarding
copyright infringement.  However, the court does not find that
mere application of the doctrine precludes a motion for summary
judgement as suggested by defendant.  Rather, application of the
doctrine serves to establish the appropriate standard needed to
prove copying.

(Hamel Decl. ¶ 10).  In presenting such evidence, plaintiff itself demonstrates that the help files text is a fact-based work that describes ideas.  (Id.)  Because the expression set forth in the help files text are intertwined with the ideas conveyed through the text, to give Meridian broad copyright protection over the text would be to confer a monopoly of the ideas expressed in the text upon the copyright owner, in violation of 17 U.S.C. 102(b).  Shaw v. Lindheim, 919 F.2d 1353, 1360 (9th Cir. 1990).  Subsequent authors wishing to convey the same facts as those described in Meridian's help files text can only choose from a narrow range of expression.  See Landsberg, 736 F.2d at 488.  Because the range of protectable and unauthorized expression is narrow, the Prolog help files text at issue is closer akin to a game strategy book.  See id.  In this context, "similarity of expression may have to amount to verbatim reproduction or very close paraphrasing before a [] work will be deemed infringed."  Id.; see Apple Computer, 35 F.3d at 1439 ("When the range of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity.")  Thus, because it is entitled to only "thin" protection, to demonstrate infringement, plaintiff must produce evidence that defendant's works are virtually identical to Meridian's works.

Meridian argues that this case should be government by the substantial similarity standard.  In support of this position, Meridian argues that the help files do not describe general industry processes, but the unique way in which Prolog operates.  However, this distinction is irrelevant.  Under either

23

circumstance, the "help files" text describes facts and ideas, which Meridian's copyright cannot protect. Only the expression of these facts is protected, and for the reasons set forth above, such expression is entitled to only thin copyright protection.

In order to prevail on its claim of copyright infringement arising out of defendant Hardin's alleged copying of Prolog's help files text, Meridian must show that defendant's e-mail attachments and Schedule H document are virtually identical in both ideas and expression to the help files text. The intrinsic analysis requires the court to evaluate the similarity of expression from the standpoint of the ordinary reasonable observer. <u>Apple Computer</u>, 35 F.3d at 1442. This is a subjective analysis, conducted without expert assistance. <u>Id.</u> Summary judgment for plaintiff in this case can only be granted if no reasonable trier of fact could find that the allegedly infringing works were not virtually identical to the Prolog help files text.

The court must compare the Prolog help files text as a whole[9] to the allegedly infringing works.[10] The court turns first

_____

[9]    Meridian asserts that the court should compare only the "applicable" help files to the allegedly infringing work. The court is not persuaded by this argument. The help files text can be analogized to an instruction manual or handbook. While the court may consider the selected similarities between one handbook and another infringing work, the court must also compare the handbook as a whole. <u>See</u> <u>Landsberg</u>, 736 F.2d at 489. Therefore, the court must examine the entirety of the help files.

[10]    Defendant Hardin argues that the court should compare the Prolog software in its entirety to the Hardin-CMIC contract in its entirety. The court is not persuaded by this argument. The applicable protected material in this case is plaintiff's Prolog help files, not the Prolog software in its entirety. Therefore, the protected material to be examined by the court is the text of the help files. Likewise, the alleged infringing
(continued...)

to the comparison between the help files text and the documents

sent as attachments in defendant Hardin's e-mail to CMIC.  See

(Ex. C to Supplemental Briefing per Mar. 31, 2006 Minute Order,

filed Mar. 31, 2006 ("Help Files"); E-mail Attachments).  Almost

every page of the e-mail attachments contains verbatim copying of

plaintiff's help files.  (E-mail attachments).  Only 4 pages of

the 38 page document do not contain verbatim copying from

Prolog's help files.  (Id. at H00897, H00912, H00915, H00919).

Of the remaining 34 pages, only 2 contain less than half a page

of verbatim copying from Prolog's help files.  The e-mail

attachments include the same structure, phrasing, and vocabulary

as the help files text.[11]  Further, the e-mail attachments

replicate verbatim the "notes" and "tips" provided by the Prolog

help files text.  Finally, the e-mail attachments actually

reference "Prolog manager" at times, as opposed to inserting the

phrase "the system" in its place, as defendant's did in other

sections of the document.  (See e.g., id. at H00899, H00901,

H00903, H00905-07, H00013-14).

/////

---

[10](...continued)
work is the Schedule H document attached to the Hardin-CMIC
contract, not the contract in its entirety.  The parties do not
dispute that this document, describing the requirements of the
project management software, was prepared separately from the
other aspects of the contract.  (Bensley Dep. at 82:18-84:18).
The Schedule H document is a discrete attachment.  As such, the
court will compare the help files in their entirety to Schedule
H.

[11]     While the court cannot comment upon the actual ordering
of the help files text as it appears in the program, within each
printed page the ordering is the exactly the same as set forth in
the e-mail attachments.  Only the spacing, text size, and bullet
point preference is different in most cases.

1    Hardin argues that the portion of the help files text that
2  may have been copied is insubstantial in light of the work as a
3  whole.  However, the Supreme Court has held that in analyzing the
4  portion of the copyrighted work, courts should evaluate "the
5  qualitative nature of the taking."  <u>Harper & Row, Publishers,</u>
6  <u>Inc. v. Nation Enterprises</u>, 471 U.S. 539, 564-65 (1985).  "[T]he
7  fact that a substantial portion of the infringing work was copied
8  verbatim is evidence of the qualitative value of the copied
9  material, both to the originator and to the plagiarist."  <u>Id.</u> at
10 565.  In view of the key role performed by plaintiff's protected
11 work in the e-mail attachments, the court cannot find that
12 defendants took an insubstantial portion of plaintiff's original
13 language.  <u>See id.</u> at 566.

14     Based upon its comparison between the help files text and
15 the e-mail attachments, the court concludes that no reasonable
16 juror could find that the e-mail attachments were not copied
17 verbatim from the help files, and thus, a reasonable juror must
18 find that the attachments are virtually identical.  Therefore,
19 plaintiff's motion for summary judgment regarding infringement as
20 to defendant's e-mail attachments is GRANTED.  However, this
21 finding does not preclude defendant from asserting any
22 affirmative defenses that may apply to this claim and may negate
23 liability.

24     The court now turns to the comparison between plaintiff's
25 help files text and Schedule H.  (Help Files; Supplemental
26 Briefing per Mar. 30, 2006 Minute Order, filed Mar. 31, 2006
27 ("Schedule H")).  While 15 pages of the 18 page document referred
28 to as Schedule H contain some similarities with the Prolog help

1    files, the similarities are not nearly as striking as in the e-

2    mail attachments.  Many of the 15 pages that contain similar text

3    only contain a small amount of similar text.  (See, e.g., id. at

4    CMiC00496, CMiC00498, CMiC00500, CMiC00501, CMiC00503, CMiC00506,

5    CMiC00507, CMiC00508).  Further, within the similar text in

6    Schedule H, there are differences in the style, organization, and

7    phrasing of the expressed ideas.  The Schedule H document also

8    contains numerous subject headings that are not cross-referenced

9    to Prolog help files headings.  (See Ex. A to Decl. Of Thomas A.

10   McManus, filed Jan. 3, 2006 ("McManus Decl.").  Given these

11   differences, the court cannot find as a matter of law that the

12   Schedule H document is virtually identical to the Prolog help

13   files.  A reasonable juror could conclude that defendant's

14   Schedule H document does not infringe plaintiff's copyright in

15   the protected help files text.  Therefore, plaintiff's motion for

16   partial summary judgment regarding copyright infringement based

17   upon defendant's Schedule H document is DENIED.

18                              **CONCLUSION**

19        For the reasons stated herein, plaintiff's motion for

20   partial summary judgment against defendant Hardin is GRANTED in

21   part and DENIED in part.

22        IT IS SO ORDERED.

23   DATED: April 5, 2006.

24                              /s/ Frank C. Damrell Jr.
                                FRANK C. DAMRELL, Jr.
25                              UNITED STATES DISTRICT JUDGE

26

27

28

                                    27