UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MERIDIAN PROJECT SYSTEMS, INC.,

       Plaintiff,

  v.

HARDIN CONSTRUCTION COMPANY, LLC, and COMPUTER METHODS INTERNATIONAL CORP.,

       Defendants.

_____/

COMPUTER METHODS INTERNATIONAL CORP., and HARDIN CONSTRUCTION COMPANY, LLC,

       Counterclaimants,

  v.

MERIDIAN PROJECT SYSTEMS, INC., JAMES OLSEN, JOHN BODROZIC, and MIKE CARRINGTON,

       Counterdefendants.

_____/

NO. CIV. S-04-2728 FCD DAD

MEMORANDUM AND ORDER

----oo0oo----

1  This matter is before the court on defendants' Hardin
2  Construction Company LLC ("Hardin") and Computer Methods
3  International Corp. ("CMIC") claim for conversion of physical and
4  intellectual property.  Plaintiff opposes the motion.  For the
5  reasons set forth herein,[1] defendants' motion is GRANTED in part
6  and DENIED in part.

**BACKGROUND**

8  Meridian is a software company that provides project
9  management software for large real estate projects and other
10  capital-intensive construction initiatives.  (Second Amended
11  Complaint ("SAC") ¶ 9.)  Meridian's "flagship" product is Prolog
12  Manager ("Prolog"), a project management software package that
13  automates all aspects of the construction process, from project
14  design to closeout.  (SAC ¶ 9.)

15  Defendant Hardin is a large construction company in Georgia
16  and long time customer of Meridian for its Prolog product.  (SAC
17  ¶ 11.)  Defendant CMIC is a software company based in Canada that
18  provides software products and software consulting.  (SAC ¶ 14.)
19  Meridian entered into contracts with both Hardin and CMIC,
20  licensing defendants to use Prolog in their respective
21  businesses.  (SAC ¶¶ 12, 15.)  Both defendants had copies of the
22  Prolog software, which, upon any breach of the End User License
23  Agreement ("EULA"), by the terms of the EULA, should have been
24  destroyed or returned to Meridian.  (Id. at ¶ 71; Ex. A to SAC at
25  §§ 2-4.)

27  [1]  Because oral argument will not be of material
assistance, the court orders the matter submitted on the briefs.
28  E.D. Cal. L. R. 78-230(h).

2

Meridian alleges that, beginning in late 2000 or early 2001, Hardin and CMIC initiated a scheme to reverse engineer Prolog for the purpose of developing a competing project management software solution that CMIC could combine with its existing financial and operational software. (SAC ¶ 16.)  As part of this scheme, CMIC allegedly sent a programmer to Hardin's facilities on numerous occasions to view screen shots of Prolog, and then reverse engineered and analyzed the functions, features, screens, architecture, logic and operation of Prolog, in violation of Meridian's EULA. (SAC ¶ 16.)  Meridian alleges that Hardin and CMIC developed a competing project management software product, called CMIC Projects, that has the same overall look and feel as Prolog, and among other similarities, many of the features and functions of Prolog.  (SAC ¶ 17.)  Meridian also alleges that Hardin and CMIC are targeting Meridian customers to induce them to switch from Prolog to CMIC Projects.  (SAC ¶ 18.)

On November 29, 2004, Meridian filed a complaint against CMIC and Hardin in the Superior Court of Sacramento County.  CMIC and Hardin subsequently removed the action to this court.  The original complaint asserted seven causes of action for breach of contract against CMIC, breach of contract against Hardin, breach of the implied covenant of good faith and fair dealing, fraud, interference with contractual relations, intentional interference with prospective economic advantage, and unfair competition. (SAC ¶¶ 20-58.)  On January 14, 2005, plaintiffs filed the First Amended Complaint ("FAC"), which added an eighth claim for copyright infringement.  (FAC ¶¶ 59-68.)  Then on January 27, 2006, plaintiffs filed the second amended complaint adding a

3

1  ninth claim for conversion.  (SAC ¶¶ 70-75.)  On February 14,
2  2006, defendants filed the instant motion to dismiss the
3  conversion claim.

**STANDARD**

5      On a motion to dismiss, the allegations of the complaint
6  must be accepted as true.  Cruz v. Beto, 405 U.S. 319, 322
7  (1972).  The court is bound to give plaintiff the benefit of
8  every reasonable inference to be drawn from the "well-pleaded"
9  allegations of the complaint.  Retail Clerks Int'l Ass'n v.
10 Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff
11 need not necessarily plead a particular fact if that fact is a
12 reasonable inference from facts properly alleged.  See id.

13     Given that the complaint is construed favorably to the
14 pleader, the court may not dismiss the complaint for failure to
15 state a claim unless it appears beyond a doubt that the plaintiff
16 can prove no set of facts in support of the claim which would
17 entitle him or her to relief.  Conley v. Gibson, 355 U.S. 41, 45
18 (1957); NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir.
19 1986).

20     Nevertheless, it is inappropriate to assume that plaintiff
21 "can prove facts which it has not alleged or that the defendants
22 have violated the . . . laws in ways that have not been alleged."
23 Associated Gen. Contractors of Cal., Inc. v. Cal. State Council
24 of Carpenters, 459 U.S. 519, 526 (1983).  Moreover, the court
25 "need not assume the truth of legal conclusions cast in the form
26 of factual allegations." United States ex rel. Chunie v.
27 Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).
28 /////

4

1                              **ANALYSIS**

2        Defendants argue that plaintiff's conversion claim should be

3  dismissed because it is preempted by federal copyright law.  The

4  Copyright Act provides, in relevant part, that all "legal and

5  equitable rights that are equivalent to any of the exclusive

6  rights within the general scope of copyright" are preempted by

7  federal law.  17 U.S.C. § 301(a).  The Copyright Act establishes

8  a two-part test for preemption.  First, the work at issue must

9  fall within the general subject matter protected by copyright.

10 Del Madera Prop. v. Rhodes and Gardner Inc., 820 F.2d 973, 976

11 (9th Cir. 1997).  Second, the rights guaranteed by state law must

12 be "equivalent to any of the exclusive rights within the general

13 scope of the copyright."  Id.  To survive preemption, the state

14 law claim must contain an "extra element" beyond the elements

15 needed to prove copyright infringement.  Oddo v. Ries, 743 F.2d

16 630, 635 (9th Cir. 1984).  Both prongs of the copyright

17 preemption test must be met if the state law claim is to be

18 deemed preempted.  Kodadek v. MTV Networks, Inc., 152 F.3d. 1209,

19 1212 (9th Cir. 1998).

20       **1.  Conversion of Tangible Items**

21       Meridian argues that defendants have converted tangible

22 property and that this conversion is not preempted by the

23 Copyright Act.  The conversion of tangible property does not fall

24 within the scope of copyright protection and is not a right that

25 is protected by the Copyright Act.  Oddo, 743 F.2d. at 635.  A

26 claim for conversion of tangible property is not preempted by the

27 Copyright Act because conversion adds an "extra element" beyond

28 those elements required to state a claim for copyright

                                    5

infringement.  Id.; Del Madera, 820 F.2d at 977.  Specifically, a claim for conversion of physical property requires plaintiff to demonstrate that defendants wrongfully obtained possession over a specific piece of property.  Oddo, 743 F.2d. at 635.

Defendant concedes that conversion of physical property is not preempted by the Copyright Act.  Defendant argues that plaintiff fails to allege the conversion of tangible property in their ninth claim for relief.  Defendant further asserts that because Meridian did not specifically allege the conversion of tangible items, Hardin and CMIC would have insufficient time to discover facts relating to the claim of conversion of tangible items.

In its claim for conversion, Meridian does not specifically allege the conversion of tangible property such as disks, files, and other related Prolog documentation.  Meridian does allege, however, that defendants violated the EULA in various ways including reverse engineering, copying, and modifying Prolog. (See SAC ¶¶ 20, 24, 29, 70, 71.)  The EULA provides that, upon any violation of the agreement, the Prolog licensee must either destroy or return the physical components that comprise Prolog. (Id. at ¶ 71; Ex. A to SAC at §§ 2-4.)  Meridian alleges that since the physical components of the program were not destroyed or returned, defendants wrongfully possessed such items.  (Id.)

The Federal Rules of Civil Procedure provide for broad notice pleading.  Fed. R. Civ. Proc. 8(a)(2).  The inquiry is whether the allegations in the complaint give defendants sufficient notice of the claims against them and the factual basis for such claims.  Conley v. Gibson, 355 U.S. 41, 48 (1957).

Drawing all reasonable inferences and viewing the complaint in the light most favorable to the plaintiff, Meridian adequately pleads conversion of physical disks, help files, and other supporting documentation and materials comprising Prolog and protected by the terms and conditions of the EULA. (SAC at ¶¶ 70-71; Ex. A to SAC at §§ 2-4.)  The Second Amended Complaint provides sufficient notice to defendants of Meridian's claim for the conversion of tangible property.  If defendants breached the EULA, they unlawfully retained possession of the disks, files, and other documents that comprise Prolog.

Therefore, defendants' motion to dismiss the conversion claim with respect to tangible property is DENIED.

## 2.  Conversion of Intangible Intellectual Property

Meridian also bases its claim for relief upon the conversion of "concepts, logic, processes, features, and functions of Prolog to the extent not covered by its copyrights." (SAC ¶ 71.)  The sole protection for works that fall within the general subject matter of copyright is an action for copyright infringement.  17 U.S.C. § 301.  The Copyright Act protects "works of authorship that are fixed in a tangible medium of expression."  Id.  Computer programs, including software, are also accorded copyright protection under the Act.  Id. at § 101; Johnson Controls, Inc. v. Phoenix Control Sys., 886 F.2d 1173, 1175 (9th Cir. 1989).

Plaintiff argues that those elements of expression within a copyrighted work that are not protected by copyright, do not fall within the "general subject matter of copyright" and that therefore, a claim of conversion as to such elements is not

7

preempted by the Act.  The Ninth Circuit has not ruled on whether those elements of a copyrighted work that are unprotected by copyright laws fall within the general subject matter of copyright.  However, most circuits that have addressed the issue have held that the "scope of the Copyright Act's subject matter is broader than the scope of the Act's protections."  Wrench LLC v. Taco Bell Corp., 256 F.3d 446, 455 (6th Cir. 2001) (citing Nat'l Basketball Assn. v. Motorola Inc., 105 F.3d 841, 849-50 (2d Cir. 1997); United States v. Berge, 104 F.3d 1453, 1463 (4th Cir. 1997); ProCD, Inc. v. Zeidenberg, 86 F.3d 1447, 1452-53 (7th Cir. 1996); see also Firoozye v. Earthlink Network, 153 F.Supp. 2d 1115, 1124 (N.D. Cal. 2001); but see Dunlap v. G&L Holding Group, Inc., 381 F.3d 1285, 1295 (11th Cir. 2004) (holding that ideas, the expression of which have merged with the idea, are not within the general scope of copyright for the purposes of complete preemption of a state law conversion claim).

    In ProCD, the Seventh Circuit held that a computer program containing a searchable database of telephone directories was "within the subject matter of copyright" even though the data in the program copied by the defendant was not "sufficiently original to be copyrighted."  Id. at 1453.  The court reasoned that the purpose of copyright preemption is to prevent states from giving works of authorship protection beyond those protections granted by the Copyright Act.  Id.  The court noted that one of the functions of copyright preemption is to prevent states from giving protection to "works of authorship that Congress has decided should be in the public domain."  Id.  The Seventh Circuit found that this goal can only be accomplished if

8

1   the general subject matter of copyright is interpreted broadly.

2   Id.  The court finds the Seventh Circuit's rationale compelling.

3        Further, the Northern District of California recently

4   addressed the issue in a similar case involving a claim of

5   conversion of intellectual property in software.  In Firoozye,

6   the court found that those noncopyrightable elements that are

7   part of a copyrighted computer software program fall within the

8   general subject matter of copyright because the subject matter of

9   copyright is broader than the scope of copyright protection.

10  Firoozye, 153 F.Supp. 2d at 1124-25.  The court then went on to

11  address whether the plaintiff's conversion claims were equivalent

12  to the rights protected by copyright.  Id. at 1125.  The court

13  noted that, although a claim for the conversion of tangible

14  property adds the extra element of "wrongful possession"

15  sufficient to bring a conversion claim outside the scope of

16  copyright preemption, conversion claims with respect to

17  intellectual property arise from the reproduction, copying and

18  misuse of a work.  Id. at 1130 quoting Dielsi v. Falk, 916

19  F.Supp. 985, 992 (C.D. Cal. 1996) (holding that a claim for the

20  conversion of intangible intellectual property is "part and

21  parcel" of a copyright claim).  The court held that such rights

22  are "clearly equivalent to [those of] a copyright claim."  Id.

23       The court agrees with the analysis of the Northern District

24  in Firoozye.  Those elements of Prolog that are not copyrightable

25  fall within the general subject matter of copyright.  Meridian's

26  claim arising out defendants' alleged conversion of intellectual

27  property also seeks to enforce rights equivalent to those

28  asserted in the copyright claim.  Plaintiff alleges that

1  defendants wrongfully reproduced aspects of Prolog into CMIC

2  projects, the essence of a claim for copyright infringement.

3  Therefore, to the extent that plaintiff alleges the conversion of

4  otherwise noncopyrightable intellectual property contained within

5  Prolog, the claim is preempted by the Copyright Act.[2]

6      Because a claim for the conversion of unprotected intangible

7  elements of Prolog falls within the general subject matter of

8  plaintiff's copyright, and because such a claim protects rights

9  equivalent to those protected by Meridian's copyright

10  infringement claim, defendants' motion to dismiss plaintiff's

11  conversion claim with respect to intangible intellectual property

12  is GRANTED.

13  /////

14  /////

15  /////

16  /////

17  /////

18  /////

19  /////

20  /////

21  /////

22  /////

23  /////

24

25      [2]    Plaintiff relies on Kremen v. Cohen to argue that
   intangible property is protected by conversion.  337 F.3d 1024

26  (9th Cir. 2003).  However, Kremen is not applicable to the issue
   at hand.  In Kremen, the court held that an internet domain name

27  was a form of intangible property protected by California's
   conversion laws.  Id. at 1035.  Kremen did not involve a work

28  protected by copyright or raise the question of copyright
   preemption.

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss Meridian's ninth claim for conversion is GRANTED in part and DENIED in part.  To the extent that plaintiff's conversion claim alleges the conversion of tangible property the claim is not preempted, and defendant's motion to dismiss is denied.  To the extent that plaintiff's conversion claim alleges conversion of unprotected, intangible intellectual property, the claim is preempted by the Copyright Act, and defendants motion to dismiss is granted.

IT IS SO ORDERED.

DATED: April 21, 2006

                                    /s/ Frank C. Damrell Jr.
                                    FRANK C. DAMRELL, Jr.
                                    UNITED STATES DISTRICT JUDGE

11